# Hissong *v.* Richmond & Danville Railroad Co.

*Action against Employer, for Damages on account of Personal Injuries.*

1. *Stipulation against statutory liability.*—A stipulation in a contract of employment for service on a railroad, that the compensation paid "shall cover all risks incurred, and liability to accident from any cause whatever, and if an employee is disabled by accident or other cause, the right to claim compensation for injuries will not be recognized," is in contravention of statutory provisions (Code, § 2590), opposed to public policy, and does not secure to the railroad company exemption from statutory liability.

2. *Contributory negligence; coupling cars with hand.*—A switchman who, in violation of a known rule of the railroad service, goes in between two cars as they approach each other, for the purpose of coupling them with his hand, instead of using a stick furnished for the purpose, is guilty of contributory negligence, which bars a recovery of damages, unless overcome by proof of the want of reasonable care on the part of the engineer.

3. *Same; want of ordinary care by engineer.*—If plaintiff first attempted to make the coupling with a stick, but could not do it on account of the inequality of the draw-heads, and went in between the cars after the engineer, in obedience to his signal, had stopped them; and the engineer, knowing his perilous position, moved the cars backwards, thereby causing the injury; this would show a failure to use ordinary care, and would avoid the defense of contributory negligence.

4. *General charge on evidence.*—When there is any conflict in the evidence on a material matter, or different tendencies are developed, from which different conclusions might be drawn, a general charge in favor of either party should never be given.

5. *Evidence of custom or usage in practice.*—Plaintiff's evidence tending to show that, before he went in between the cars, he had attempted

to couple them with a stick, signalled the engineer to stop the train, and went in after the cars had stopped; evidence that this was in accordance with the custom and practice, when a coupling can not be made with a stick, is relevant and admissible, as showing that the rule was not imperative, or was sometimes waived; but evidence of the fact that it was the custom and duty of engineers not to move their trains when stopped, until a signal is given, not being shown to apply to the coupling of cars in a yard, is not admissible.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by John S. Hissong, to recover damages for personal injuries sustained by him while in the defendant's service; and was commenced on the 6th March, 1890. The injuries were received on the 24th November, 1889, while the plaintiff, who was a switchman, was attempting to couple two cars in the defendant's yards at Birmingham; and they resulted in the amputation of one of his legs. The plaintiff himself testified, that he first attempted to couple the cars by using a stick, which was provided for him, and which the rules of the company required to be used, but could not do it because the draw-heads of the cars were not of the same height; that he then signalled to the engineer to stop the train, and, when it had stopped, went in between the cars to make the coupling with his hands; that when he been working at the pin thirty or forty seconds, and before he had effected a proper coupling, the engineer moved the car backwards on him, and thereby caused the injuries. One Barnett, who was in the defendant's employment at the time of the accident, and was superintending the movement and coupling of the cars, testified that he saw the plaintiff go in between the cars; that he went in before the moving car had stopped, and when it was slowly approaching the stationary car; that he did not see the plaintiff attempt to make the coupling with a stick, and found no stick at that place after the accident. The plaintiff asked said Barnett these questions: (1.) "Was it not the custom and practice on defendant's road, and on all well regulated railroads, for switchmen, when they find it impossible to make a coupling with a stick from the outside, to go in between the cars for that purpose, after having first signalled the engineer to stop the train, and the train has been stopped in response to the signal?" (2.) "Is it not the custom of engineers on all well regulated railroads, and is it not their duty, when the train is stopped, and the man is in between the cars, to remain standing until the engineer gets the signal to go ahead?" (3.) "Was not such the custom and duty on defendant's road?" (4.) "Was it not the custom and duty of engineers on defendant's road, when their trains

were stopped, not to move again until they were signalled to do so ?" The court sustained objections to each of these questions, and the plaintiff excepted.

The only plea set out in the record is the general issue, but the principal defense seems to have been contributory negligence ; and it is said that another special plea was interposed, to which a demurrer was sustained, and which set up the stipulation in the contract of employment copied in the opinion ; but the record does not show these facts. The court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiff excepted to this charge, and he here assigns it as error, together with the rulings on evidence.

BOWMAN & HARSH, for appellants, cited Cooley on Torts, 687 ; Bish. Non-Contract Law, § 1074 ; *Railroad Co. v. Peavey*, 44 Amer. Rep. 630 ; 31 Amer. & E. R. R. Cases, 176 ; 28 *Ib.* 319 ; *Romick v. Railroad Co.*, 15 Amer. & E. R. R. Cases, 288 ; 8 S. W. Rep. 706 ; *Barry v. Railroad Co.*, 11 S. W. Rep. 308.

JAMES WEATHERLY, *contra*, cited *Railroad Co. v. Propst*, 83 Ala. 518 ; *Pryor v. Railroad Co.*, 90 Ala. 32.

CLOPTON, J.—Appellant, who was in the employment of appellee as yard-switchman, sues to recover damages for an injury suffered while engaged in coupling cars. The first count of the complaint alleges that the injury was caused by defects in the condition of the track, and the coupling appliances. Plaintiff's right to recover, under this count, may be eliminated from consideration of the case, there being no evidence tending to show that the defects were the proximate cause of the injury, or that the failure to discover and remedy them was owing to the negligence of defendant, or of any person in the employment of the company to whom was intrusted the duty of seeing that the ways, works, machinery and plant were in proper condition. The second count alleges, that the injury was caused by negligently moving the engine and cars attached thereto, while plaintiff was between the cars, performing the service pertaining to his employment. It is framed under sub-division five (5) of section 2590 of the Code, which declares, that the employer is liable to answer in damages to the employè, when the injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has charge or control of any engine, car, or train, upon a railway, or any part of the track of a railway.

[Hissong v. Richmond & Danville Railroad Co.]

Plaintiff entered the employment of defendant on the day before the accident. One of the conditions of the contract of employment was, "that the regular compensation paid for the services of employès shall cover all risks incurred and liability to accident from any cause whatever. If an employè is disabled by accident, or other cause, the right to claim compensation for injuries will not be recognized." The statute makes the employer answerable in damages, when an employè is injured in any of the classes of negligence specified therein. Such a stipulation, being in contravention of the statutory provisions, is opposed to public policy, and does not avail to secure non-liability for an injury caused to an employè by defendant's own negligence or misconduct in the cases specified in the statute.

It is uncontroverted, that plaintiff had knowledge of a rule established by defendant, forbidding coupling by hand, and requiring the use of sticks, which would be furnished for the purpose, long enough to prevent going between the cars; that plaintiff, by the contract of employment, agreed to strictly comply with the regulation, and that a stick for answering the purpose was furnished him. It appears from his own testimony, that when he went in between the cars, the draw heads were together. Had he stood out, it is manifest he would not have been injured. Having knowledge of the rule, and having contracted to comply with it, if the facts be, which the evidence of Barton tends to show, that plaintiff, in disregard and in violation of the rule, went inside of the track, while the engine and cars attached were in motion, closely approaching the car to be coupled, attempted to make the coupling with his hands, and was injured in consequence, this constituted contributory negligence, and a complete defense to the action. *Ga. Pac. Railway Co. v. Propst*, 83 Ala. 518; *L. & N. R. R. Co. v. Watson*, 8 So. Rep. 249.

But, contributory negligence of the party suing for personal injuries, will not avail in all cases, and under all circumstances, to defeat a recovery; the rule has its exceptions and qualifications. The general affirmative charge in favor of the defendant should not have been given, if there be any evidence, however slight, from which inferences may be drawn involving the application of another and different principle—the duty of those in charge of the train, if aware of plaintiff's negligence, to use ordinary care to avoid injuring him, or not to injure him recklessly, wantonly, or intentionally. Plaintiff's version of the manner in which the accident occurred is, in brief, that when he went to couple the cars, noticing one of the draw-heads was lower than the other, he stepped out and got the

[Hissong v. Richmond & Danville Railroad Co.]

stick, which he had been accustomed to use, to make the coupling; that he tried to drive the pin down with the stick, and being unable to do so, gave the signal to the engineer to stop, in response to which the train was brought to a standstill; that he then went between the cars, and while endeavoring to force the pin down with his hand, having been so engaged for about thirty or forty seconds, the train was moved backwards, and the car ran over his leg, breaking his ankle.

The adoption of the rule, preventing the going between the cars, and requiring the coupling with a stick, and its incorporation as a term of the contract of employment, devolved on the defendant the duty of providing cars which may be connected by use of a stick, with not absolute, but reasonable safety. But, notwithstanding this duty, whether going between the cars is contributory negligence availing to defeat a recovery, when it is impracticable, standing outside, to make the coupling with a stick, on account of some defect in the draw-heads or coupling attachment, depends on the circumstances.—*Penn. Co. v. Whitcomb*, 31 Eng. & Amer. R. R. Cases, 149. But, if the facts be, that having first attempted and failed to make the coupling with a stick, on account of the inequality of the draw-heads, plaintiff signalled the engineer to stop, and, after the train was brought to a full stop, went between the cars, and, before completing the coupling, the engineer, knowing the perilous position of plaintiff, moved the train backwards, thereby causing the injury, ordinary care to avoid the injury was not exercised, and plaintiff's negligence in going between the cars affords no defense to the action.—*L. & N. R. R. Co. v. Watson, supra.*

In *Romick v. Chic, R. I. & P. R. R. Co.*, 15 Amer. & Eng. R. R. Cases, 288, the court directed the jury to find a verdict for defendant, upon the grounds, that the evidence showed that the deceased employé contributed to his injury by his own negligence, and failed to show that defendant was negligent. In reference to this direction, it is said: "But, it is urged that deceased contributed to his injury in going in between the cars, being warned of the danger by a fellow employé. If this position be found to be supported by the evidence, it is answered by the consideration, that the evidence tended to show plaintiff's [defendant's?] employés, who directed the train to be moved, had knowledge of the alleged negligence of deceased in going between cars. Under a familiar rule, recognized by this court, contributory negligence of the person injured will not excuse the other negligent party, if the contributory negligence be known to him, and he could have avoided it by the exercise of reasonable care. There

[Long v. Geo. Pacific Railway Co.]

being evidence upon the questions of the negligence of the parties, and the knowledge of the co-employès of the deceased of his negligence, if he was guilty of any, these questions, under repeated rulings of this court, should have been submitted to the jury."

In the present case, plaintiff and Barton, who had control of the train and attending employès, were the only witnesses examined on the trial. Their evidence materially varies, presenting two phases of the facts, which involve different principles, making the result dependent upon which phase may be found to be supported by the evidence, and the inferences drawn therefrom. When the evidence is so conflicting that legal conclusions can not be drawn from it, the ascertainment of the facts should not be taken from the jury.

Evidence that it was the custom and practice on defendant's road, for switchmen, finding it impracticable to couple with a stick, to go between the cars for that purpose, having first signalled the engineer to stop the train, and the train, in response thereto, is stopped, was, in view of the tendencies of some of the evidence, relevant and admissible. Such custom and practice, if they existed, tended to show that, in such case, defendant waived the rule requiring coupling to be done with a stick, and forbidding going between the cars for that purpose, or, at least, did not regard its observance as imperative. But the evidence of the custom and duty of the engineers not to move their train, after being stopped, until a signal is given, was properly excluded. The existence of such custom, when doing the ordinary and general business of transportation, does not tend to show it was the custom when merely coupling cars in a yard for their delivery elsewhere.

Reversed and remanded.