[Memphis & Charleston Railroad Co  v. Graham.]

# Memphis & Charleston Railroad Co. v. Graham.

*Action for Damages against Employer, by Administratrix of Deceased Employe.*

| 94 | 545 |
|---|---|
| 97 | 192 |
| 97 | 218 |
| 94 | 545 |
| 100 | 388 |
| 100 | 626 |
| 101 | 47 |
| 101 | 553 |
| 94 | 545 |
| 103 | 169 |
| 94 | 545 |
| 107 | 633 |
| 109 | 257 |
| 110 | 272 |
| 94 | 545 |
| 111 | 289 |
| 111 | 300 |
| 94 | 545 |
| 123 | 233 |

1. *Contributory negligence in violation of rule by employe.*—The violation of a reasonable rule adopted and promulgated by the employer, does not constitute contributory negligence on the part of an employé, unless he had knowledge of it; and a plea which sets up such violation as contributory negligence, but does not aver knowledge, is demurrable.

2. *Issue on defective plea.*—When issue is joined on a defective plea, without objection to it, advantage can not be taken of its defects by objections to evidence in support of it, nor by instructions to the jury.

3. *Rule prohibiting employe to go between cars in motion for purpose of coupling or uncoupling them.*—A rule adopted and promulgated by a railroad company, forbidding its employés to go in between cars while in motion for the purpose of coupling or uncoupling them, is reasonable, and a violation of it constitutes contributory negligence; but the rule must be taken with the qualification, that the company must provide some safe method or means of performing that service; and if the sticks provided for that purpose are too short to effect a necessary coupling, the rule is no protection to the company against liability for damages on account of injuries sustained while performing the service in violation of it.

4. *Negligence in performing dangerous service.*—The act of uncoupling cars while in motion by going in between them, though attended with more or less danger, does not necessarily constitute contributory negligence, in the absence of a rule prohibiting it; yet, if the uncoupling could be effected with safety while standing on the platform of one of the cars, the act of going in between them for that purpose would constitute contributory negligence.

5. *Evidence of custom or usage, as to meaning of rule.*—A rule of a railroad company being in evidence which required the conductors of freight cars "to assist in the shifting and making up of trains," parol evidence is admissible to show that, by the custom and usage on the road for many years, under this rule, the conductors coupled and uncoupled cars on their trains as part of the duty thereby imposed on them.

6. *Same, as to violations of rule.*—When a rule adopted and promulgated by a railroad company is explicit in its terms, and reasonable (as, prohibiting employés to go in between moving cars for the purpose of coupling or uncoupling them), parol evidence can not be received to show that it was frequently or habitually violated by the employés.

7. *Rule requiring railroad employes to inspect machinery, &c., before using it.*—A railroad company can not, by any rule adopted for the government of its employés, as by requiring them to inspect all machinery, &c., before using it, avoid or limit its statutory liability for negligence, or its duty to provide and maintain suitable and safe

18

[Memphis & Charleston Railroad Co. v. Graham.]

materials and appliances for the prosecution of its business; yet such rule being designed and calculated for the protection of the employés, imposes on them the duty of making an examination so far as their information and opportunities allow, consistently with their other duties and the attendant circumstances, and is to this extent reasonable and proper.

8. *Same; who is person in service intrusted with duty of seeing that machinery, &c., is in proper condition.*—Such rule does not make a conductor or brakeman "a person in the service of the master or employer intrusted with the duty of seeing that the ways, works, machinery or plant are in proper condition," as those words are used in the statute (Code, § 2590), but imposes on him the duty of examining with reasonable care the machinery, &c., which he is himself using; and he is not relieved from the performance of this duty by the fact that another conductor or brakeman, examining the car a few days before, failed to discover and report a defect.

9. *Reasonableness of rule, as question of law or of fact.*—Whether a rule adopted by a railroad company for the conduct of its employés is reasonable or not, is a question of law for the court, and should not be submitted to the jury for decision.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by Mrs. Ella P. Graham, widow and administratrix of the estate of her deceased husband, John L. Graham, to recover damages for the wrongful and negligent acts of the defendant railroad corporation and its servants, which, as alleged, caused the death of said Graham while in the defendant's service as a conductor on one of its trains. The evidence showed that said Graham was a regular freight conductor, but was subject to service as conductor of extra passenger trains; that he had been ordered by the train-master to go to Huntsville and take charge of an excursion train to Memphis on the morning of October 14th, 1887; that while assisting to get out the train, going in between a passenger car and a box car while in motion, for the purpose of uncoupling them, he was run over and killed, and that the accident was caused, as alleged in each count of the complaint, by a defective drawhead attached to the passenger car. The defendant pleaded not guilty, and contributory negligence on the part of said Graham—one plea alleging contributory negligence generally; another, that he "came to his death while violating a rule of defendant in trying to get between cars in motion to uncouple the same;" and the third, that one of the rules required all employés, "before coupling cars or engines, to examine the kind and conditions of drawheads," &c., "and prohibited them from placing in a train any car with a defective coupling, until they have first reported its defective condition to the yard-master or conductor;" that said Graham did not obey or observe this rule, and that the accident would not have

[Memphis & Charleston Railroad Co. v. Graham.]

happened if he had observed it. The record does not show any objection to either of these pleas, and the judgment-entry only recites a trial on issue joined, resulting in a verdict for plaintiff for $6,500.

One of the defendant's rules offered in evidence, No. 201, made it the duty of the conductors of freight cars "to assist in the shifting and making up of trains ;" and the court allowed several witnesses for the plaintiff to testify, against the objection and exception of the defendant, that under this rule they frequently coupled and uncoupled cars of their trains. Another rule, No. 204, offered in evidence by the defendant, required that such conductors "must see that the couplings and brakes of the cars in their trains are in good order before starting, and inspect them as often as the train stops to take water, or lays off to pass other trains ;" and other rules forbade the coupling of cars by hand, or going between moving cars for that purpose, and required a stick to be used for coupling purposes ; but the court allowed several witnesses for the plaintiff to testify, against the objection and exception of the defendant, that this rule was frequently, if not habitually, violated. The following rules was also read in evidence by the defendant :

"*Rule* 138. Great care must be exercised by all persons when coupling cars. In as much as the coupling apparatus of cars or engines can not be uniform in style, size or strength, and is liable to be broken, and from various causes to render it dangerous to expose the hands, arms or persons of those engaged in coupling between them, all employès are enjoined, before coupling cars or engines, to examine so as to know the kind and condition of the drawhead, drawbar, link and coupling apparatus; and are prohibited from placing in the trains any car with a defective coupling, until they have first reported its defective condition to the yard-master or conductor. Sufficient time is allowed and may be taken by employès use [?] coupling in all cases to make the examination required. Coupling by the hand is strictly prohibited. Sticks must be used to guide the link or shackle, and each yard-master, switchman, brakeman, or other employè who may be expected to couple cars, is required at all times to provide himself with a stick for that purpose."

"*Rule* 139. Every employè must exercise the utmost caution to avoid injury to himself or to his fellows, especially in the switching of cars and in all movements of trains; which work each employè must look after and be responsible for his own safety. Jumping on or off trains or engines in motion, getting between cars in motion to couple or uncouple them,

and all similar imprudences, are dangerous, and in violation of duty. All employès are warned, that if they commit these imprudences, it will be at their own risk and peril."

"*Rule* 140. Every employè is hereby warned, that before exposing himself in being on the tracks and grounds of the company, or in working with or in being in any manner on or with its cars, engines, machinery or tools, he must examine for his own safety the condition of all machinery, tools, tracks, cars, engines, or whatever he may undertake to work with or upon, before he makes use of or exposes himself on or with the same, so as to ascertain, so far as he reasonably can, their condition and soundness ; and he is required promptly to report to the superintendent, or to the agent who may be his immediate superior officer, any defect in any track, machinery, tools or property of the company, affecting the safety of any one in using or operating upon or with the same. The object of this rule is to protect employès from suffering personal injuries from any cause. While the company will be responsible to each one for the discharge of all its duties and obligations to him, and for any fault or neglect of its own, or of its board of directors or general officers, which are the proximate cause of the injury, yet it will not be responsible to him for the consequences of his own fault or neglect, or that of any other employès of the company, whether they or either of them are superior to him in authority, as conductor, foreman, or otherwise ; it being the right and duty of every employè, under all circumstances, to take sufficient time before exposing himself to make such examination as is here required, and refuse to obey any order which would expose him to danger. No person who is careless of others, or of himself, should be continued in the service of the company."

The defendant reserved exceptions to portions of the general charge given by the court, as follows : (1.) "If you find that there was such defect [in the drawhead], and the same was unknown to the person in the defendant's employment who was intrusted with the duty of seeing that the drawhead of the car was in proper condition, and that such defect had existed for such a length of time that with proper diligence it could have been discovered or remedied by the defendant; then you would be authorized under the law to say that the defendant was negligent." (2.) "You must also look to all the evidence, including custom referred to by the witnesses, to determine the reasonableness of said rule, and whether or not they had been modified by the custom of employès in coupling and uncoupling cars, and whether or not such custom was known to to the defendant."

[Memphis & Charleston Railroad Co. v. Graham.]

The defendant also excepted to the refusal of each of the following charges, which were asked in writing: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "Rule 139 introduced in evidence is such a rule as defendant had a right to establish; and if said Graham came to his death in consequence of his . trying to get between cars while in motion to uncouple them, he was acting in violation of said rule, and your verdict should be for the defendant." (3.) "It is not shown in this case that it was the defendant's duty, while the car with the broken drawhead was at Huntsville for several days prior to October 13, 1887, to examine or inspect the same, or to notify said Graham as conductor of its condition." (4.) "If the jury find from the evidence that a rule of the defendant made it a violation of duty for an employè to get between cars in motion to couple or uncouple them, and that said Graham came to his death in trying to get between cars in motion to uncouple them, then their verdict must be for the defendant." (5.) "If the jury believe from the evidence that said Graham came to his death while violating a rule of defendant in trying to get between cars in motion to uncouple the same, their verdict must be for the defendant." (6.) "Rule 138 introduced in evidence is a reasonable rule which the defendant had the right to establish." (7.) "If it was safer for Graham to go on the platform, and from there couple or uncouple, and was more dangerous to go between the cars to couple or uncouple, and these facts are shown by the evidence, and if Graham adopted the more dangerous method, then he was guilty of contributory negligence, and the verdict of the jury should be for the defendant." (8.) "No failure of duty on the part of the defendant in allowing the drawhead or coupling apparatus to become or remain broken or defective, would excuse said Graham from examining the condition of such drawhead or coupling apparatus before using the same, or exposing himself between the cars; and if the jury believe from the evidence that if Graham had examined the condition of the drawhead or coupling apparatus, he would have discovered that it was defective or broken, so as to be dangerous to use them, the verdict must be for the defendant." (9.) "Although the railroad company may have been negligent in having a defective car, yet, if the jury believe from the evidence that Graham violated a rule of the company in going between cars in motion to uncouple them, and thereby was killed, and that he had knowledge of such rule at the time he so violated it, then plaintiff can not recover in this case." (10.) "If the jury believe from the evidence that it was a rule of the defendant that no employè should enter between cars

in motion to couple and uncouple them, and that Graham had knowledge of such rule, and in violation thereof did go between said cars while in motion; and if they further believe from the evidence that his violation of said rule proximately contributed to his death, then plaintiff can not recover in this case." (11.) "If the jury believe from the evidence that said car could have been uncoupled with safety after it had stopped, or with safety from the platform of said car; and that a rule of the company required that all employés should exercise great care and caution in coupling and uncoupling cars, and Graham had knowledge of such rule; then he was bound to uncouple said car from the platform, or wait until the car had stopped before attempting to uncouple it, and if his failure to do so proximately contributed to his death, then plaintiff can not recover."

The rulings on evidence, the charges given, and the refusal of the charges asked, are assigned as error.

HUMES & SHEFFEY, for appellant, cited the following authorities: *E. T., V. & G. Railway Co. v. Johnston*, 75 Ala. 590; *M. & M. Railway Co. v. Smith*, 59 Ala. 245; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133; *Smoot v. M. & M. Railway Co.*, 67 Ala. 13; *L. & N. R. R. Co. v. Orr*, 8 So. Rep. 364; 91 Ala. 548; *Pryor v. L. & N. R. R. Co.*, 8 So. Rep. 55; *G. P. Railway Co. v. Propst*, 83 Ala. 525; 85 Ala. 203; *Mudge v. Treat*, 57 Ala. 1; *Farrior v. Andrews & Co.*, 69 Ala. 96; *Irion v. Lewis*, 56 Ala. 190; *Rosser v. Bunn & Timberlake*, 66 Ala. 89; *Gillam v. R. R. Co.*, 70 Ala. 268; *Scarborough v. Malone*, 67 Ala. 590; *Tyree v. Lyon*, 67 Ala. 1; 3 Brickell's Digest, page 638, §§ 4 and 5; Bishop on Contracts, §§ 450–459, and cases cited; Beach on Contrib. Neg., § 141, and cases in note 1; 118 Am. R. R. Cases, 100; 3 Wood's Railway Law, 1458; 2 Rorer on Railroads, 836; *C. R. R. & B. Co. v. Seals*, 59 Ga. 436; 1 Shearman & R. on Negligence, § 207, p. 356; 14 Am. & Eng. Enc. of Law, pp. 857, 859, 908 (b), and cases cited; 15 Am. & Eng. R. R. Cases, 97; *L. & N. R. R. Co. v. Fleming*, 18 Am. & Eng. R. R. Cases, 347; *Vedder v. Fellows*, 20 N. Y. 126; 31 Am. & Eng. R. R. Cases, 331; *Ferguson v. R. R. Co.*, 5 Am. & Eng. R. R. Cases, 614; *Houston, &c., R. R. Co. v. Fowler*, 8 Am. & Eng. R. R. Cases, 504; *Cunningham v. C. M. & St. P. R. R. Co.*, 12 Am. & Eng. R. R. Cases, 217; *Alexander v. R. R. Co.*, 25 Am. & Eng. R. R. Cases, 458; *R. R. Co. v. Frawley*, 28 Am. & Eng. R. R. Cases, 308; *R. R. Co. v. Ledbetter*, 21 Am. & Eng. R. R. Cases, 555; *Darracutts v. R. R. Co.*, 31 Am. & Eng. R. R. Cases, 157.

[Memphis & Charleston Railroad Co. v. Graham.]

Wm. Richardson, and E. L. Pulley, *contra.*—(1.) It is the
duty of a corporation to furnish its servants with safe and
sound ways, means, machinery, instruments and appliances,
and to keep the same in good repair. Not to do this is negli-
gence *per se.*—*Ala. Gr. So. R. R. Co. v. Jones,* 71 Ala. 487;
*Georgia Pacific R. R. Co. v. Propst,* 83 Ala. 518; *Wilson v.
L. & N. R. R. Co.,* 85 Ala. 269; *L. & N. R. R. Co. v. Jones,*
83 Ala. 376; *M. & B. R. R. Co. v. Holborn,* 84 Ala. 133;
*L. & N. R. R. Co. v. Coulton,* 86 Ala. 129; *Ala. Gr. So. R.
R. Co. v. Hill,* 90 Ala. 71; *Pryor v. L. & N. R. R. Co.,*
90 Ala. 33; *L. & N. R. R. Co. v. Watson,* 90 Ala. 68; *M. &
C. R. R. Co. v. Askew,* 90 Ala. 5; *Plank v. N. Y. C. & H.
R. R. R. Co.,* 60 N. Y. 607; *Gibson v. Pacific R. R. Co.,*
2 Amer. Rep. 497; *Pike v. B. & A. R. R. Co.,* 53 N. Y. 549;
*Lewis v. St. Louis & M. R. R. Co.,* 21 Amer. Rep. 385;
*L. & N. R. R. Co. v. Allen's Adm'r,* 78 Ala. 501; Amer. &
Eng. Enc. of Law, title "*Master and Servant,*" pp. 62, 63;
Pierce's Railway Accident Law, p. 376. (2.) The master can
not escape responsibility on the ground that the servant neg-
lected some rule of caution, if he suffers the rule to be
habitually disregarded.—Cooley on Torts, 2d Ed., 632, 637,
640, 668, note; 2 Beach on Corporations, 971. (3.) As to
charges given and refused, see *L. & N. R. R. Co. v. Perry,*
87 Ala. 392; *C. & W. R. R. Co. v. Bradford,* 86 Ala. 574;
*City Council of Montgomery v. Wright,* 72 Ala. 411; 60 Am.
Rep. 152; *Ala. Gr. So. R. R. Co. v. Arnold,* 84 Ala. 160;
*Smith v. Ga. Pacific R R. Co.,* 88 Ala. 538; *Ga. Pacific R.
R. Co. v. Propst,* 90 Ala. 1; *M. & C. R. R. Co. v. Askew,*
90 Ala. 5; *L. & N. R. R. Co. v. Webb,* 90 Ala. 194; 4th Am.
& Eng. Ency. of Law, p. 73, note 2.

COLEMAN, J.—The evidence shows that the plaintiff's in-
testate, John L. Graham, whose regular employment was that
of freight-car conductor, went between the cars while in mo-
tion to uncouple a freight car from a passenger car, and on ac-
count of a defective or broken drawhead, or coupling appli-
ance, was crushed and killed. There was a platform to the
passenger car next to the freight car, where the uncoupling
was to be done. The defense was contributory negligence,
and that plaintiff's intestate came to his death in violation of
a rule of defendant, which prohibited employès from going
between the cars while in motion to uncouple them. The
plea does not set out the rule, nor aver that plaintiff's intestate
knew of the existence of such rule. In the case of *L. & N.
R. R. Co. v. Hawkins,* 92 Ala. 241; 9 So. Rep. 271, it was
distinctly declared as the settled doctrine in this State, that

the adoption and promulgation by an employer of a rule for the guidance of an employè does not charge the latter with knowledge thereof, so as to impute negligence to him for its violation, but that to such end it is essential that knowledge of its existence be brought home to the employè. It was further held, that a plea setting up a violation of such rule as establishing contributory negligence was open to demurrer, which failed to aver knowledge of such rule. It is also well settled, that where issue is joined upon an insufficient plea, it becomes one of the issues to be tried by the jury, and that the defendant is entitled to the advantage of such plea, in the introduction of evidence in support of it, and in the instructions to be given by the court to the jury.—*Farrior v. Andrews*, 69 Ala. 97.

A conductor who voluntarily, even though by the permission or acquiescence of the employer, undertakes to perform the duties of coupling or uncoupling cars, subjects himself to all reasonable rules and regulations prescribed by the employer for the government of those whose duty it is to perform this work. Rule 139 offered in evidence prescribes that "getting between cars in motion to couple or uncouple them is dangerous and in violation of duty. All employès are warned that, if they commit these imprudences, it will be at their own risk and peril." This rule, or one similar to it, has been declared by repeated decisions of this court to be reasonable and "wholesome," and that railroad companies were justifiable in adopting and enforcing it, for their own protection, and that of employès.— *Ga. Pac. Railway Co. v. Propst*, 90 Ala. 3 ; 83 Ala. 518; *Pryor v. L. & N. R. R. Co.*, 90 Ala. 35; *L. & N. R. R. Co. v. Watson*, 90 Ala. 69.

When the authorities declare that the rule is "reasonable" and "wholesome," it is with the qualification, or understanding, that the duties required may be performed consistently with the observance of the rule ; and if the sticks furnished by the employer, as the evidence in this case tends to show, are so short that a coupling can not be made by their use without going between the cars, the rule which forbids employès from going between cars to effect a coupling while in motion would afford no protection to the master, if the duty imposed necessitated its non-observance. The rule which requires the use of sticks to make couplings is "reasonable" and "wholesome," and an employè having knowledge of the rule, and provided with a stick by which this duty can be performed without going between the cars, and in violation of the rule, without urgent and excusable necessity, goes between the cars, and is thereby injured, is guilty of contributory neg-

[Memphis & Charleston Railroad Co. v. Graham.]

ligence of an aggravated character, and his remedy is gone. Beach on Contrib. Neg., § 141; *Pryor v. L. & N. R. R. Co.*, *supra*; *Ga. Pac. Railway Co. v. Propst*, 83 Ala., *supra*.

There is no evidence to show that cars can be uncoupled by the use of a stick, and we presume sticks as now prepared can not be used for that purpose. In referring to the use of sticks, the rule prescribes that they must be used for making couplings, not uncouplings.

In considering this case, we have kept in view the fact, that the injured person was the conductor himself, authoritatively exercising control over the engineer and brakemen, and the movement of the 'cars. Is there any evidence to show that the work of uncoupling the cars could have been performed in an apparent safe way, which deceased did not adopt, or that the condition of the cars was such that they could not be uncoupled with reasonable safety except by going between them, or that the company had waived its right to insist upon an observance of this rule? As a legal proposition, independent of any rules provided by the master, if an employè selects a dangerous way to perform a duty, knowing it to be attended with danger, when there is a safe way apparent to him, and he undertakes to perform the duty in the dangerous way, and in consequence thereof is injured, he is guilty of such contributory negligence as to cut off all legal remedy for the injury.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 548; 8 So. Rep. 364; *Railroad Co. v. Holborn*, 84 Ala. 137; *Highland Ave. R. R. v. Walters*, 91 Ala. 435; 8 So. Rep. 360.

The act of uncoupling cars while in motion by going between them does not necessarily constitute contributory negligence, under all circumstances.—*Goodrich v. R. R. Co.*, 15 Amer. St. Rep. 412. It is, however, necessarily an act attended with more or less danger. There was evidence introduced on the trial which tended to show that the cars, on account of their condition, could not have been uncoupled from the platform of the passenger car; but there was evidence tending to show that the uncoupling could have been effected in this way with perfect safety, and that that was the proper way under the circumstances existing in this case. Applying the principle of law declared in the *Orr Case* and *Holborn Case*, *supra*, in regard to the duty of an employè when there is a dangerous way and a safe way to perform an act, the court was in error in refusing to give charge No. 11 requested by appellant. It is contended by appellee that this charge and other charges were properly refused under the authority of *L. & N. R. R. Co. v. Perry*, 87 Ala. 394, because the charges failed to hypothesize the question of knowledge or notice of the existence of

the rule. The plea in the present case failed to aver knowledge or notice, and issue was joined upon it in its insufficient condition. The fact of knowledge or notice was not an issue before the jury, and the charges requested were not objectionable for ignoring an outside issue.—*L. & N. R. R. Co. v. Watson*, 90 Ala. 68; 87 Ala. 394, *supra*. It may be that, ordinarily, freight or box cars which have no platform can not be uncoupled without going between the cars; but this would not excuse an employé who failed to use the platform, if there was one, and the use of the platform was obviously the safer way.

A disputed question in the case arises upon the proper construction of Rule 201, which requires freight-car conductors "to assist in the shifting and making up of trains." In behalf of plaintiff, evidence was introduced tending to show that, under the rule, it was the custom, and had been for many years, for conductors to couple or uncouple cars, and that at times all the conductors on the road performed this duty, and it was generally understood that the word "assist" included this duty. One witness testified that he had seen every conductor on the road assist in this way in coupling or uncoupling cars. For appellant it was contended, that coupling and uncoupling was the duty of brakemen only, and the word "assist" meant that conductors should superintend and "give the proper signals." We think the evidence of custom on this question was properly received. Rules for the government of employés should be written with precision, and be free from ambiguity. The principle of law is, "that parol evidence of usage is admissible to explain terms ambiguous or doubtful in significance, or from which to infer the intention, understanding and agreement of the parties, and to incorporate a stipulation or element wherein the contract is silent."—*East Tenn., Va. & Ga. R. R. Co. v. Johnston*, 75 Ala. 604; *Barlow v. Lambert*, 28 Ala. 704. The court properly received evidence which tended to show the meaning of the word "assist" as used in Rule 201, and the evidence on this point being in conflict, the determination of the disputed fact was a question for the jury.

Evidence of usage and custom for many years, on the part of brakemen, to go between the cars while in motion to make an uncoupling, was introduced to show that Rule 139, which prohibits this mode of coupling and uncoupling, was not insisted upon by the railroad company, and was not binding upon the employés. The rule is clear and explicit in terms, free from ambiguity or equivocation. It does not "palter in a double sense." Mr. Greenleaf, vol. 2, § 251, says, "the true office of a usage or custom is to interpret the otherwise inde-

terminate intention of parties, to fix the meaning of words and expressions of doubtful or various senses." In the case of *East Tenn., Va. & Ga. R. R. Co. v. Johnston*, 75 Ala. 604, this court declared that evidence of usage or custom will not be received when it varies or contradicts the express terms of a contract.—*Barlow v. Lambert*, 28 Ala. *supra*. "When persons enter into express stipulation, it is a reasonable rule, subject only to a few exceptions, that neither custom or usage will be allowed to dispense with such express stipulations." *M. & E. R. R. Co. v. Kolb*, 73 Ala. 401. The rule has been declared to be "reasonable" and "wholesome." It was adopted for the protection of the company, and for the safety of its employès. Evidence of usage and custom of its violation by those it was intended to protect, either to exempt them from its obligations, or to subject the company to damage because of its repeated violation, does not come within the exception, and such evidence is inadmissible. The case of *Hissong v. Richmond & D. R. R.*, 91 Ala. 518, does not in any manner conflict with the rule here declared.

So far as Rule 140, or any other rule, militates against the liability imposed upon the employer or master under section 2590, or contravenes the principle of law which requires the employer or master to furnish and maintain suitable material and appliances for the safe prosecution of its business, and the right of the employè to presume that this has been done, it will be regarded as wholly inoperative, and afford no protection to the employer or master; but, so far as Rule 140 imposes the duty upon employès to examine for their own safety the condition of the car, engines and machinery, &c., before using them, or exposing themselves on or with the same, so as to ascertain as far as reasonably can be done their condition and soundness, it is reasonable and proper.

It can not be expected of car conductiors or brakemen to make the same careful examination, and to be able to discover defects to the same extent as that expected and required of the employer or master, or person intrusted generally with this duty for the public safety, or safety of employès; but the character of the general duties to be performed by conductors and brakemen is such that they necessarily become more or less familiar with the appliances and machinery constantly in their use and under their supervision, and know to some extent when they are not in proper condition for safe use. To the extent of their information and the opportunities afforded to make such examination, consistently with their other duties and the circumstances attending, they should observe and obey the rule.

Whether the deceased was negligent in not making such examination, or whether the defect was of that character that it could not have been discovered upon such examination as it was his duty to make, and whether he did conform to the rule, and failed to discover the defect, is a question of fact for the jury. We do not think a conductor or brakeman is "a person in the service of the master or employer intrusted with the duty of seeing that the ways, works, machinery or plant were in proper condition," within the meaning of subdivision 1 of section 2590 of the Code ; and our understanding of the rule of the company is, that the duty imposed upon conductors and brakemen to examine the machinery and appliances devolves upon those conductors and brakemen who are using the machinery, ways, works, &c. in question. The fact that a brakeman or conductor of some other train, at a former period, may have noticed the defect, and neglected to report such, did not exempt the conductor whose duty it was to use the defective appliance or machinery from making the examination for his own safety as required by the rule.

The Employer's Act does not, and never was intended to, take from the master the defense of contributory negligence.— *C. & W. Railway v. Bradford*, 86 Ala. 579 ; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133. The principles of law declared in *Orr v. L. & N. R. R. Co.*, and *R. R. Co. v. Holborn*, as to what constitutes contributory negligence on the part of an employé, may be applicable to two phases of the tendencies of the testimony in this case ; that which defines when an employé must select the safer way to perform a duty, and also when an employé assumes at his own peril that proper appliances have been provided by the master. The jury is the sole judge whether the facts bring the case within their application.

The general charge of the court, considered as a whole, with but few exceptions, is a clear and correct exposition of the law as applicable to the many questions raised by the evidence. The court, however, should not have left it to the jury to say whether the rule was reasonable, which requires that employés shall use a stick in coupling cars, or which prohibits them from going between cars while in motion to couple or uncouple. As a matter of law, the rule is reasonable. When the proof shows that the company refused to furnish sticks, or that the duty required, on account of the appliance or other proper causes, could not be performed without a violation of the rule, the master can not invoke the rule for its protection. In such cases, the court might and should hypothesize the enforcement of the rule upon the finding of the jury as to these facts.

We have attempted to limit and define the proper bound-

[Ferris v. Montgomery Land & Improvement Co.]

aries of usage and custom as applicable to the facts in this case.

Charge No. 1 requested by the defendant was properly refused. Charge No. 3 is abstract, as there is no evidence tending to show the car was in Huntsville prior to October. Charges, 2, 4, 5, 7, 9 and 10 were faulty, in ignoring the evidence which tended to show that, on account of the condition of the appliance, the duty could not be performed except by going between the cars. Charge 8 assumes that John L. Graham did not examine the drawhead and coupling apparatus. This was a fact to be determined by the jury. Charge 11 states the law very clearly, as we understand it, and ought to have been given. Charge 6 also ought to have been given. If desired, and the evidence justified it, an explanatory charge should have been requested by appellee.

Reversed and remanded.

WALKER, J. not sitting.