[United States Cast Iron, Pipe & Foundry Co. v. Granger.]

# United States Cast Iron, Pipe & Foundry Co. *v.* Granger.

## *Injury to Servant.*

(Decided April 13, 1911. 55 South. 244.)

* 1. *Master and Servant; Injury to Servant; Statutory Liability.*— To escape liability imposed by sub-div. 1, section 3910, Code 1907, on the ground that the servant injured was intrusted with the duty of seeing that the ways, works, etc., were in proper condition, the master must show that the duty intrusted imposed a responsibility, as distinguished from a duty created by a general rule on an employee to examine the appliances; and the duty imposed on a mere laborer must be general, and affect the safety of others than himself using the appliance, and must not be merely transitory as a result of the progress of the service in which he was employed.

2. *Same; Defective Appliances.*—Under the evidence in this case it was a question for the jury whether a co-employee had been intrusted with the duty of seeing that the hook, which spread and caused the injury, was in proper condition, and whether he had failed to do so.

3. *Same.*—Where a servant was intrusted by the master with the duty of seeing that appliances were in proper condition, and a co-servant was injured because of a defect from it, whether the servant regarded the defect as dangerous or not was immaterial.

4. *Same; Instructions.*—Where the charge was that the proximate cause of the injury was a defective condition of an appliance, an instruction that, to entitle the servant to recover, the question was whether or not the appliance was in a defective condition, and that that was the cause proximately contributing to the injury, and that if the jury found that it was, the question was whether or not the plaintiff was entitled to recover, was not objectionable as advising that the servant could recover, though the defective condition of the appliance was established as affording the proximate cause of the injury.

5. *Trial; Conflicting Evidence; Jury Question.*—The rule that, where facts are admitted thereby establishing another fact, a mere denial of the latter fact will not create a conflict in the evidence requiring a submission to the jury does not apply where there were no admitted facts by which the ultimate fact in issue was established, and where testimony concerning the ultimate fact was conflicting.

6. *Same; View of Premises; Refusal to Grant.*—Where request is made for permission for the jury to view the premises where the injury is said to have occurred, coupled with a prayer to permit a view of the operation of the machinery, constituting but a single experiment, it is properly refused because of the request to permit the experiment.

7. *Same; Right to Grant.*—In passing on a request for view of the premises the court may consider the expense and delay, distance required to be traveled, want of complication or uncertainty in the evidence, and the presence of maps, diagrams and photographs portraying the locus in quo, to enable it to properly exercise its discretion.

8. *Appeal and Error; Review; Discretion.*—It is within the sound discretion of the trial court to grant or refuse to grant a view of the premises, and its exercise will not be revised unless clearly abused.

9. *Same; Harmless Error; Evidence.*—Where a witness has covered a subject of inquiry by the testimony given it is harmless error to disallow a question concerning that particular matter.

10. *Charge of Court; Ignoring Evidence.*—Where there was evidence that two employees had been intrusted with the duty of seeing that an appliance was in proper condition, a charge directing a verdict for the master unless the jury believed that one of the employees was the person intrusted with the duty of seeing that the appliance was in proper condition, ignored a phase of the evidence, and was properly refused.

11. *Evidence; Experiments.*—A single experiment, when offered to be made in the presence of the jury with inanimate objects, is properly excluded as evidence in an action by a servant for injuries caused by defective appliances.

12. *New Trial; Denial; Conclusions.*—Where the question depended on the credence to be given to the witnesses heard by the court and jury this court will not disturb an order of the trial court refusing a new trial based on the ground that the verdict is against the great preponderance of the evidence.

APPEAL from Bessemer City Court.

Heard before Hon. WM. JACKSON.

Action by John Granger against the United States Cast Iron Pipe & Foundry Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The excerpt from the court's oral charge is as follows: "To entitle the plaintiff to recover in this case, the question for you to determine is whether or not the hook was in a defective condition—that that was the cause that proximately contributed to his injury. If you find it was, then the question for you to consider is whether or not plaintiff would be entitled to recover."

Charge 8 was as follows: "Unless the jury believe from the evidence that the shake-out, Robert Chillison, was the person intrusted by the defendant with the

duty of seeing that the hook and chain by means of which the corebars on No. 3 pit were pulled and moved, were in proper condition, their verdict must be for the defendant."

WEATHERLY & STOKELY, for appellant. Counsel discuss the assignments of error as to the evidence, but without citation of authority. The court erred in the first part of the oral charge excepted to.—*U. S. C. I. P. & F. Co. v. Driver*, 50 South. 118; *Seaboard Mnfg. Co. v. Woodson*, 94 Ala. 143. The court erred in refusing the general affirmative charge and the affirmative charge as to count 3.—2 LaBatt M. & S. sec. 670. It is the general duty of the servant to see that the machinery which he uses is in proper repair, and when it is not, to report same to the master.—97 Am. Dec. 240; 1 LaBatt, sec. 414; Roberts & Wallace, 254; *M. & C. R. R. Co. v. Graham*, 94 Ala. 545. The plaintiff himself was the person intrusted by the master with the duty of seeing that the machinery was in order, and his bare statement that he was not foreman of Pit No. 3, does not make such a conflict in the evidence as to make it a question for the jury.—*Peters v. So. R. R. Co.*, 135 Ala. 533; *Richards v. Sloss-Sheffield S. & I. Co.*, 41 South. 288. Where the injured party is the person intrusted with that duty under the statute he cannot recover.—*Pioneer M. & M. Co. v. Thomas*, 133 Ala. 279; *B'ham F. & M. Co. v. Gross*, 97 Ala. 220.

FRANK S. WHITE & SONS, and THOS. T. HUEY, for appellee. The court was not in error in sustaining objections to the questions to the witness Chilleson.—*A. G. S. R. R. Co. v. Yont*, 51 South. 740; *N. C. C. & C. Co. v. Kilgore*, 50 South. 205; *L. & N. v. Brooks*, 132 Ala. 471; *L. & N. v. Tegner*, 125 Ala. 593; *Town of Elba v. Bul-*

[United States Cast Iron, Pipe & Foundry Co. v. Granger.]

*lard,* 44 South. 412. The court did not err in refusing a view of the premises under the circumstances in this case, or rather no abuse of its discretion is shown.— 50 Am. Rep. 550; 117 L. R. A. 539; 13 Ency. of Ev. 964. The opinions and conclusions of the witness are not admissible where the jury is capable of forming the same from the evidence.—*Dupree v. State,* 42 South. 1004; 5 Ency. Ev. 662. The evidence showed that it was the shake-out's duty to inspect and report the defects, and that he had failed in his duty.—1 LaBatt, Sec. 133; *A. G. S. v. Bailey,* 112 Ala. 167. The duty of inspection is on the master.—135 Ala. 135. The affirmative charge was therefore properly declined.—*Holmes v. B'ham So.,* 140 Ala. 208; *Tenn. Co. v. Garrett,* 140 Ala. 563. The appellant cannot complain of the oral charge of the court.—*Decatur C. W. Co. v. Mehaffey,* 29 South. 646; *Pos. Tel. Co. v. Hulsey,* 31 South. 527. Charge 8 was properly refused.—57 Ala. 161; 119 Ala. 615; 128 Ala. 307; 128 Ala. 242. The court will not review the action of the trial court in declining to grant a new trial.— *Cobb v. Malone,* 92 Ala. 630.

McCLELLAN, J.—This is the second appeal in this case.—*United States C. I. P. & F. Co. v. Granger,* 162 Ala. 637, 50 South. 159. On the retrial the case went to the jury on the issues made by counts 3 and 4, and pleas of the general issue, contributory negligence, and assumption of risk. These counts impute negligence to the defendant (appellant) in respect of its ways, works, machinery, etc., whereby a large piece of iron, called a "corebar," was permitted to fall upon him, to his injury. These counts were drawn under the first subdivision of the liability act (Code 1907, § 3910).

There are no errors assigned as upon rulings on the pleadings.

On the former appeal it was ruled that the issues of defect vel non of the hook, and of the cause of the falling of the corebar, and of the point of time at which the hook "spread," if at all, were for the jury to decide. That was true on the evidence submitted on the second trial below.

As we take it from brief for appellant, the chief contention of legal result is that, under the evidence, the plaintiff, himself, was the person "intrusted" by defendant "with the duty of seeing that the ways, works, machinery, or plant were in proper condition," in the particular to which he ascribes his injury for proximate cause. If such was the case, it must be conceded that to plaintiff's own negligence, and not to any dereliction imputable to the defendant, would his injury be ascribable, and hence plaintiff would have no right of recovery therefor against defendant.—*Pioneer Mining Co. v. Thomas,* 133 Ala. 279, 32 South. 15. Manifestly the duty "intrusted," in the respect indicated by the above quotation from the statute, must impose a responsibility, as distinguished from a duty created by justifiable general rule, on an employee, "to examine *for his own security* (italics supplied) the appliances which he uses."—2 Labatt's Master & Servant, § 674; Roberts & Wallace (3d Ed.) pp. 254, 255; *M. & C. R. R. Co. v. Graham,* 94 Ala. 545, 555, 556, 10 South. 283. Nor does the *duty,* so intrusted, have reference to the obligation on a mere laborer to look after certain instrumentalities "at some particular moment of the progress of the work."—Author, supra; *O'Connor v. Neal,* 153 Mass. 281, 26 N. E. 857. That such responsibility must be the result of the master's selection, or by his authority, is expressly provided in the clause with which we are concerned. But while the *duty* under consideration must be, in source and nature, as stated before, yet,

on the other hand, it need not amount to *superintend-ence* (*Copithorne v. Hardy,* 173 Mass. 400, 53 N. E. 915; 2 Labatt, supra); for a servant may have the duty so imposed on him notwithstanding he is subject to a superintendent's orders (*Copithorne v. Hardy, supra*). So, without assuming to comprehensively define the *duty intrusted,* under this feature of the statute, and confining the observation to the nature and scope of the duty so intrusted, it may be safely said that the duty, when the inquiry involves the relation of an em-ployee ranking, in his ordinary sphere, as a laborer merely, must be general, in the sense of effect, as re-gards the safety of others than the employee using the appliance and not merely transitory as the result of the progress of the service in which he is employed.

In *Copithorne v. Hardy, supra,* the injury was caused by the falling of shafting from the ceiling. Pursuant to the orders of Shea, defendant's superintendent, Mac-laren, who was a carpenter, moved the shafting the day before the injury was suffered. When started, after the removal, it squeaked, was stopped, and Maclaren worked on it again. Later in the day it fell. The court, through Holmes, J., said: "Shea had the wider authority, no doubt, but was a salesman, and the man who really understood the machinery and looked after it, although subject to orders, was Maclaren. The jury were warranted in finding that he was a person in-trusted within the meaning of the statute."

That appellant's insistence may be accepted, leading to the legal consequence that Chillison was not a per-son intrusted with the duty under consideration, and thereby referring the duty's imposition to plaintiff himself (omitting, for the present, duty of others as a factor), it must be ruled, as matter of law on the evi-dence, that Chillison's obligation to look after the ap-

pliance in question, at least chiefly, related to his own
security and was, also, an obligation of a transitory na-
ture, created, merely, by the progress of the operation
to which he, as head shakeout, owed and rendered ser-
vice.  If this may be affirmed on the evidence, the af-
firmative charge, requested by defendant, was its due.
This relegates the decision of the inquiry to the evi-
dence.

The operation in progress, when plaintiff was in-
jured, was the removal, by means of a crane, of about
12 pieces of iron called "corebars."  The place from
which they were taken was called a "pit."  Chillison
was "head shakeout" in this operation, and his place
of service was at the top of the pit, which was about
20 feet deep.  Chains were provided to be, and which
were on this occasion, put around each corebar, below
a flange thereon.  From a ring attached to the hoist
hooks pended.  The mode was to put the hooks over
(around) the respective chains on the corebars, and
thereby raise them.  Three were thus being hoisted
when one corebar fell on plaintiff.  It was plaintiff's
theory, as before indicated, that the falling of the core-
bar was the immediate result of the spreading of the
hook.

Chillison testified: "At the time plaintiff was hurt,
it (hook) had been that way (spread) about three
days.  It was my duty as shakeout to keep up with
those hooks and see whether they were spread or not,
and when I found anything wrong with the hook it was
my duty to report it to Mr. Veitch, the boss there.
*   *   *  This hook had been spread for three days
prior to that time, and I knew it.  *   *   *  As a mat-
ter of fact I did not report the spreading of the hook.
*   *   *  We had been pulling out corebars with this
hook up to the time of the accident, every day, and dur-

ing that time it had worked all right and had not slipped that I remember of.   *   *   *   After the corebars are pulled out of the flasks, they all just pull together, but never rock out at all; when they hit together this time, this corebar slipped loose and fell right on top of the flask, and I holloed to look out, and he was too slow to get out of the way.   When the three corebars came out together, then it fell, knocked the chain off the end of the hook—knocked the chain out of the hook, that must have knocked the chain off the end of the hook.   *   *   *   By this being a hook open a little more than the rest, the chain slipped out, and the bar fell.   *   *   *   It was my duty to keep a lookout for my chain and hooks and things, and if I saw anything wrong with them I would report it to the foreman, and he would give me an order to have them fixed. So far as I know, Mr. Veitch was the foreman of my pit.   Veitch told me he was my boss, he would tell me about what to do, Granger (plaintiff) was there, and he would tell me what to do, and I would do what both of them said.   Granger was my boss part of the time, when he was there.   Granger was not with me all day while the pit was being operated; might have been around there all day.   He was right close to the pit, but I didn't need no boss all the time; knowed what I had to do, and went on and done it."

John Hancock testified: "It was the head shakeout's business to look after the hook; that was his duty, to see that all was correct, and, if not correct, to report to his boss man, and he gives an order and he goes and gets it fixed."

The testimony of the witnesses Cole, Pounds, and Phillips was to like effect.   Phillips said this:  "It is the duty of the shake-outs who use the hooks to keep a lookout and notice when they get out of order."

[United States Cast Iron, Pipe & Foundry Co. v. Granger.]

The plaintiff testified: "Had been working on that pit 3½ days; but I was not boss there. They took me off my pit and shoved me into the other. * * * I did not see the hook, and don't know really what was the matter with it. It was not my business to look after it. * * * (On the cross) I was put there (referring to his transfer from pit 4 to pit 3, where he was injured) to see what the trouble was with the pipe coming out scrapped, and Veitch had charge of three pits and I had one. I was there three days just to walk around and see what the trouble was. I had charge of pit 4, until I was told to go to that one and help Veitch. When I went to No. 3, I did not examine the chains at all, but I examined them on No. 4 all the time. At this time I didn't have charge of any pit and was not bossing at all."

The evidence offered by the defendant was, in the main, opposed to that offered by the plaintiff. On the score of Chillison's duty, Ferguson testified: " * * * Granger was employed as foreman of pit No. 3; I having employed him as foreman. * * * Veitch had no authority over plaintiff in this case. * * * It was his duty to see that the machinery and appliances were kept in proper condition. I was the chief representative of the defendant at that plant and had never intrusted to Chillison the duty of seeing the chains which he used were kept in repair and proper condition; that was Granger's duty, and I never authorized him to delegate that duty to any employee under him." On the cross he testified: "* * * If his appliances got out of order, it would be the craneman's duty to inform his foreman, and he would apply to the superintendent, and it is the same as to the shakeouts, if they find anything wrong, to report it," etc.

It is seen that plaintiff's general relation to the operation of pit 3 was matter of dispute in the evidence. It will be also noted that the duty of looking after the appliances in question was expressly denied by plaintiff.

Appellant would invoke, as averting a conflict in the evidence on the issue in hand, the rule applied in *Peters v. Southern Railway Company,* 135 Ala. 533, 540, 33 South. 332, and in *Richards v. Sloss-Sheffield Steel & Iron Company,* 146 Ala. 254, 41 South. 288, both cases involving *knowledge* of dangers imminent, viz., that, where facts are admitted thereby establishing another fact, the mere denial of the latter established fact will not create a conflict requiring submission to the jury of the issue thus vainly attempted to be affected. The rule cannot be applied. The cited decisions are inapt. There were, in this instance, no admitted facts by which the vital fact of the repository of the duty involved was established. Indeed, the repository of the duty in question was undertaken to be shown and refuted, by the litigants, respectively, by statements of witnesses testifying on whom rested the duty.

But, aside from this conflict in evidence, it cannot be ruled as matter of law, on the record here, that the duty on Chillison was individual, in the sense of his own security, or that it was merely an irresponsible element of his service in the progress of the work.

In *O'Connor v. Neal,* 153 Mass. 281, 26 N. E. 857, it does not appear from the report that any duty was *imposed by the master* on the plaintiff's assistant to look after the suitableness of the place at which the staging was located. Indeed, it appears that the materials furnished by the master were suitable for the service, and that the assistant to plaintiff proffered his service to arrange the staging and plaintiff accepted it; and the

court observed that for aught that appeared he, plaintiff, had as much to do with the placing of the supports for the planks as the laborer who, manually, did the work. The principle of the decision, in the particular now under consideration, is sound, we think; but the ruling as upon the facts shown is not applicable to the case at bar.

Here, broad language is used, in describing the duty imposed on Chillison in respect of these hooks. He was doubtless advantageously located, in his service, to observe their condition. The operation of hoisting them necessarily suggested the possibility, at least, of their spreading, thereby rendering them unfit for the service, as well as creating danger to those engaged about the pit; the sphere of danger widening as the corebar was drawn out of and above the flask. Reason, inducing natural conduct, might have suggested that one constantly connected, as Chillison was, with the operation in which the hooks had important functions, might best serve the purpose in view, viz., of attending to the discovery of the defect and directing his superior's attention thereto that it might be remedied. As before indicated, the fact, if so, that the general relative rank of Chillison was below that of others about that part of the plant, did not necessarily prevent Chillison from being "intrusted" with the duty here involved. Whether the duty asserted and denied was with Chillison was a jury issue, and the court correctly submitted it to them.

Whether Chillison regarded the spread of the hook dangerous or not was immaterial. The issue, in this respect, was defect vel non, and his conclusion, invited by the question set out in the first assignment of error, would not have shed any light on that issue. Whether

there was a defect was for the jury to determine, as was ruled on former appeal.

This question was propounded, by defendant's counsel, to the witness Cole: "Would the other corebar have a tendency to knock it off?" It is not clear whether *it,* in the question, referred to the chain or to the hook. But, assuming that reference was had to the hook, the witness had covered the subject of the injury in the just preceding part of his testimony. No injury attended the disallowance of the quoted question, even if it be assumed that it was error to so rule.

On the cross plaintiff was asked, "How long had he been on No. 4 at the time of the accident?" If the question referred to Link, who, plaintiff testified, had succeeded him on No. 4 pit, and so, with the view to ascertaining how long plaintiff had been at pit 3, it was, in effect, answered by the plaintiff in his statement of when he left pit No. 4 and how long he had been on pit 3. No injury could have attended the disallowance of this question.

Upon the conclusion of the plaintiff's evidence, defendant's counsel moved the court to allow the jury to view the premises where the injury occurred and see the method of removing corebars from pit No. 3 by means of the crane, chains, and hooks, the plant being about one-half mile from the court-room, and on a car line; and in support of the motion offered evidence to the effect that the operation then employed was the same as when plaintiff was injured, and that the premises where the injury took place were in the same condition as at that time. Plaintiff's counsel objected. The court overruled the motion and denied the view; defendant excepting.

We have no statute in this state governing the matter of *view* in the trial of causes. Elementary writers

[United States Cast Iron, Pipe & Foundry Co. v. Granger.]

divide the means of establishing facts into three channels, viz., inspection, documents, and witnesses. It is the first with which the motion stated is, generally, concerned, if at all. There is no difficulty attending the allowance of an inspection of objects of a movable nature, capable of being brought into the presence of the court and jury, provided, of course, preliminary legal conditions to their introduction in evidence are, in the opinion of the court, properly met.

But a single experiment, even when offered to be made in the presence of the court and jury, with inanimate objects, has been pronounced by this court, in both civil and criminal cases, not acceptable as evidence.— *Tesney v. State,* 77 Ala. 33; *A. G. S. R. R. Co. v. Collier,* 112 Ala. 681, 14 South. 327. See *Miller v. State,* 107 Ala. 40, 19 South. 37.

In respect of the second feature of the motion stated, viz., "to see the method of removing corebars, * * * *" it is not clear that the operation proposed to be demonstrated could be viewed in any other light than that prevailing, as indicated, where *experiment* was sought to be made before the jury. The overruling of the motion for *view,* coupled as it was with the prayer for the unallowable demonstration indicated, might well be justified on that ground.

The abstract, inherent power of a court to order a view, outside of the place of trial, of premises or objects involved in civil causes, existed at common law.— *Springer v. City of Chicago,* 135 Ill. 552, 26 N. E. 514, 12 L. R. A. 609; 13 Ency. of Ev. pp. 956, 957, 964, 965; 2 Elliott on Ev. § 1231; 1 Wharton's Law of Ev. (2d Ed.) §§ 345-347; 1 Greenleaf on Ev. §§ 13i, 13j; note to *People v. Thorn,* 42 L. R. A. 368 et seq.; Jones on Ev. § 404. Whether the *view* moved for in such cases shall be granted or refused is a matter addressed to the

sound discretion of the court, and when exercised will not be revised except in cases of abuse thereof.—Author, supra; Jones on Ev. § 406; 17 Cyc. pp. 290, 291.

There is nothing shown here from which *abuse* of the discretion in this instance, is made to appear.

The excerpt from the oral charges set out in the fifth assignment of error was not erroneous. By it the jury were told that a prerequisite to a recovery by plaintiff was that the proximate cause of his injury should have been the defective condition of the hook. This was the gravamen of the counts on which the trial was had. The jury were not advised by the court that he should recover even if the hook's defective condition was established as affording the proximate cause of his injury. The language of the excerpt is involved, but it bore no vice as we understand it. The court's subsequent explanation or addenda emphasized the burden of proof assumed by the plaintiff.

Charge 8, requested by the defendant, was properly refused. It predicated a verdict for defendant upon a disbelief that Chillison was the person intrusted with the duty of seeing that the hooks and chains, used to raise corebars at pit 3, "were in proper condition." It may be the charge possessed the vice of requiring a finding that Chillison's duty was broader than that of inspecting and of reporting to another a discovered defective condition, as phases of the evidence tended to show. But, be this as it may, there was evidence tending to show duties, in respect of looking after these appliances, on the foreman of pit 3, who, according to some of the testimony, was Veitch. The charge would have taken that controverted issue of fact from the jury, by predicating a verdict for the defendant upon the sole phase of the evidence to which it refers.

This disposes of all the errors assigned, except that based upon the denial of a new trial. The only argument in brief in support of the contention of error in this particular is that the verdict is against the great preponderance of the evidence. This depends upon the credence to be given witnesses. The court and jury had the advantage of observing and hearing these witnesses testify. Under the long-approved rule of *Cobb v. Malone*, 92 Ala. 630, 9 South. 738, we cannot say that the trial court erred in overruling the motion for a new trial.

No error appearing, the judgment is affirmed.
Affirmed.

SIMPSON, MAYFIELD, and SOMERVILLE, JJ., concur.