# Richmond & Danville Railroad Co. v. Hissong.

*Action by Employe to Recover Damages for Personal Injuries.*

1. *Error without injury in rulings on pleadings.*—Sustaining a demurrer to a special plea, if erroneous, is not ground of reversal when the record shows that the defendant had the full benefit of the same defense under other pleas.

2. *Evidence comparing coupling appliance used with that required to be used admissible.*—Where a witness has testified that the plaintiff used a piece of board in an unsuccessful attempt to couple cars, he may be asked on cross-examination what kind of sticks the defendant furnished for coupling, with a view of showing that the one used was equal to that required to be used.

3. *Evidence of a custom in opposition to the terms of a written contract inadmissible.*—Evidence that there was a custom for brakemen, when they found it impossible to couple with a stick, to go between the cars after having signaled the engineer to stop the train, is not admissible to vary the terms of a rule of the master, expressly agreed to by the injured employe, forbidding brakemen from going between cars to make a coupling   (*Hissong v. R. R.* 91 Ala. 514, modified.)

4. *American tables of mortality as evidence.*—When properly identified, the American tables of mortality are admissible as evidence to show the probable duration of life.

5. *Reading decision as part of charge to jury proper.*—It is not error for the court to read to the jury as part of its charge, the law as settled by the Supreme Court on appeal from a prior judgment in the same case.

6. *Charge construed as a whole.*—Two sentences in a charge connected together by the conjunction "but," must be construed together in determining whether either is erroneous.

7. *Charge assuming a fact improper.*—A charge which assumes as true a disputed question of fact, is properly refused. .

APPEAL from Jefferson Circuit Court.

Tried before Hon. S. H. SPROTT.

This action was brought by John S. Hissong, against the Richmond & Danville Railroad Co. to recover damages for personal injuries sustained while in its employment, by

which plaintiff lost a leg.    There was judgment for $9,314.40 for plaintiff.

The facts are substantially the same as set forth in the opinion of the former appeal, 91 Ala. 514.

"The court, in its charge to the jury, read as part thereof a portion of the court's opinion in the former appeal, and to the reading of this portion of the opinion, the defendant duly excepted.    In his oral charge to the jury, the court, after instructing them as to the effect of the engineer's knowledge of the plaintiff's position after he had stopped the train, continued :   "Now, do you believe the facts are as stated by the plaintiff,—that he made the signal to the engineer, which was observed and obeyed by him, and that, when the engine was brought to a stop, he thereupon went in between the cars, and attempted to couple the cars with his hands, (being unable to couple them with a stick,) and while in that dangerous position the engineer moved his train, and thereby caused the injury ?  If you believe this, then the plaintiff would be entitled to recover.    But if he went in there while the train was in motion, and went in to couple with his hands, not attempting to use a stick, and the engineer knew nothing about it, then there can be no recovery in this case.    You will, of course, try this case just as you would try any other.    You will not apply a rule to a corporation that you would not to an individual.    The plaintiff may have been injured, and very greatly so, yet, if he maimed himself, there can be no recovery."   Upon the introduction of all the evidence the defendant, among other written charges, requested the court to give the following:   (1) "If the jury believe the evidence, they must find for the defendant."  (2)  "If the jury believe the evidence they are bound to find that Barton, the foreman of the engine, who was directing the movements of the engine and train, was not guilty of any negligence."    (10)  "There is no evidence in this case that any custom and practice among switchmen on the defendant's road, of going in between the cars to couple, without using coupling sticks, was known to, and acquiesced in by defendant."    (11)  "With regard to the custom which has been testified about, as to going to make couplings, unless you believe from the evidence that such custom was known to the defendant, and acquiesced in by it, or had prevailed for so long a time as that defendant was bound to know, and would be presumed to have acquiesced in it, then you should not consider such custom, in arriving at your verdict."

[Richmond & Danville R. R. Co. v. Hissong.]

JAMES WEATHERLY, for appellant, contended that plaintiff should have complied with the rule forbidding him to go between the cars, citing *Prior v. R. R.*, 90 Ala. 32; *Hissong v. R. R.*, 91 Ala. 514; that parol evidence is not admissible to contradict a contract, 1 Ala. 438; *Ib.* 160.

BOWMAN & HARSH, for appellee, insisted that evidence of the custom was admissible, citing *Knox v. Rivers*, 14 Ala. 249; *R. R. v. Johnson*, 75 Ala. 596; *Kinney & Newhall v. v. Appleton*, 114, N. Y. 140.

HARALSON, J.—The defendant interposed the defense of contributory negligence, by a special plea, to which the plaintiff demurred, on the ground, that this defense was available under the general issue, which had been pleaded. The court sustained the demurrer. This ruling was erroneous.—*Kansas City M. & B. R. R. Co. v. Crocker*, 95 Ala. 412.

But, in this case, that was error without injury, since the parties tried the question of contributory negligence, on the part of the plaintiff, and of wanton, reckless or intentional negligence, on the part of defendant, as though appropriate pleadings for the trial of such issues had been made in the cause. We have many times held, that the sustaining of a demurrer to a special plea, if erroneous, is not ground of reversal, when the record shows, that the defendant had the full benefit of the same defense, under his other pleas. *L. & N. R. R. Co. v. Davis*, 91 Ala. 487; *Oliver v. A. Gold L. Ins. Co.* 82 Ala. 417; *Owings v. Binsford*, 80 Ala. 421.

On the cross-examination of defendant's witness, Barton, plaintiff's counsel asked, and the court allowed, against the objection of defendant, the question and its answer, "What kind of coupling-stick did the R. & D. R. R. Co., at that time furnish its employees?" There was no error here, since the defendant had made enquiries of the witnesses, the tendency of which was to prove, that the stick the plaintiff used on the occasion of the injury, was not a suitable one. It was, therefore, competent for defendant to show, what kind of sticks the defendant provided for its employees, and that this one, was as good. "Sticks long enough, to prevent going between the cars," was the requirement of the company, of its switchmen. It was competent for plaintiff to show that he had, on the occasion, a stick that answered this requirement, and one of the ways of showing it, was by proof comparing it with the sticks the company proffered to, but did not make it obligatory on switchmen to use.

The court allowed the witness, Barton, to testify against the objection of the defendant, that it was the custom and practice of the railroad company, at the time of the injury to plaintiff, "Where switchmen had tried to make the coupling and had stood on the outside and hammered with the stick and the pin failed to go down, to signal the engineer to stop, and after the engine had stopped still, *for him to go in and see what was the matter*."

The question propounded to this witness, on the former trial, and which was passed on when the case was here on appeal, (91 Ala. 514) was, "Was it not the custom and practice of defendant's road, and on all well regulated railroads, for switchmen, when they find it impossible to *make a coupling* with a stick from the outside, to go in between the cars *for that purpose*, after having first signaled the engineer to stop the train, and the train has been stopped in response to the signal?"

This court said in reference to the proof of this custom, that it "was in view of some of the tendencies of the evidence relevant and admissible. Such custom and practice, if they existed, tended to show that, in such case, defendant waived the rule requiring coupling to be done with a stick, and forbidding going in between the cars for that purpose, or at least, did not regard its observance necessary." (91 Ala. 519).

The rule to which the court was referring, as one that might be waived, and which the plaintiff in his contract of employment with the defendant agreed he would observe and not violate, reads, "Cars must not be coupled by hand. Sticks for the purpose long enough to prevent going between the cars, will be furnished on application to yard master's office at end of each division. Any employe going in between cars while in motion, to uncouple them does so at his own risk, and against the rule of the company."

It will be observed, that this rule applied to coupling and uncoupling. Coupling with the hand, is absolutely forbidden, and requiring it to be done with sticks provided by the company for the purpose, is enjoined; and, uncoupling cars by going in between them, when in motion, is also prohibited.

· On the first trial, the proof of custom sought to be established, was that a switchman might go in between the cars, *to couple them* when he found it impracticable to do so with a stick, having first signaled the engineer to stop. On this trial, the proof of custom sought to be proved for the same purpose, is, that under the same circumstances as before

hypothesized, the switchman might go in between the cars, to "*see what was the matter.*" The purpose had in seeking to prove this custom, is the same, now, as the attempt to prove a custom on the other trial, viz: that "defendant had waived the rule requiring coupling to be done with a stick, and forbidding going in between the cars for that purpose," although the question propounded, to show the custom, is different now, from what it was before. Neither the rule, nor the contract of plaintiff with defendant, contained anything in respect to plaintiff's going between the cars *under any circumstances*, to make a coupling with his hand, or to see what was the matter; and, to allow him to do so, for either purpose, is a violation of the rule, and his contract, binding him to it. It is not to be disputed, that a *rule* may be shown by parol evidence to be of no force and effect, by its general non-observance, and by the continuous and well known acquiescence of a company in its non-observance. If rules are promulgated as shams with no intention on the part of the company making them, to have them complied with, but are gotten up as a basis of a convenient and simulated defense, when sued by some one injured from a failure to observe them, they ought to be treated, as they deserve, as if never made, and of no force or effect. It is the duty of a railroad company—out of suggestions of its own best interests, and in obedience to a humane and beneficent policy, to save human life and prevent irreparable misfortune to its employees—to promulgate rules which admit of employment in its service, with safety to life and limb; but, its duty does not end with prescribing such rules. It is equally binding on them, to honestly and faithfully require their observance.—*Whitaker v. D. & H. C. Co.*, 126 N. Y. 544; *Wabash v. McDaniel*, 107 U. S. 454.

Such a rule as No. 20, which we are considering, has been held to be reasonable and just, and its violation, where the company has provided a safe method for performing the service, is contributory negligence. This rule is explicit in its terms and reasonable in its requirements. The plaintiff entered into an express stipulation to abide by it. Its "conditions (were) distinctly understood and agreed to" by him, when he entered the defendant's service as switchman, the day before he was injured. There is no indefiniteness or ambiguity about the rule or contract, and none is suggested. The principle of law, in such cases, as we have heretofore said is, "that parol evidence of usage is admissible to explain terms ambiguous or doubtful in significance, or from which to infer the intention, understanding and agreement

of the parties, and to incorporate a stipulation or element wherein the contract is silent." Custom never assumes "a character so binding as that parties can not by agreement, place their contracts without their influence. So, when custom and contract come in conflict, the latter prevails over the former. · · · Custom can not overturn the positive requirements of the law, or the express contracts of the parties, whether the contracts be evidenced by writing or not." *Barlow v. Lambert*, 28 Ala. 708. Speaking of this same rule, we said of it, in another connection, "It was adopted for the protection of the company, and for the safety of its employees. Evidence of usage and custom of its violation by those it was intended to protect, either to exempt them from its own obligations, or to subject the company to damage because of its repeated violation, does not come within the exception (that of the variation of contracts by proof of custom) and such evidence is inadmissible."—*Mem. & Chas. R. R. Co. v. Graham*, 94 Ala. 555; *E. T. V. & G. R. R. R Co. v. Johnston*, 75 Ala. 604; *Boon v. Steamboat Belfast*, 40 Ala. 184.

The question propounded, simply asked the witness, if such a custom as that enquired about existed, and, if admissible under any phase of the evidence, from aught that appears, it may not have existed a week, or for any such length of time, as that the defendant will be presumed to have acquiesced in it, and had impliedly consented that plaintiff should not be bound by his contract.—*Herring v. Skaggs*, 73 Ala. 454.

If rule 20, by long non-observance had gone into disuse, and was a regulation of the company by name only, and no longer binding, we know of no law which, notwithstanding, prevented the parties from making it the basis of their contract for plaintiff's service, and if *bona fide* entered into, how proof of any custom theretofore existing to the contrary, might set aside and annul the deliberate engagements of the parties. Surely, this would be making their contract for them, and denying them the privilege. We must hold, therefore, that when a contract of the kind we are construing has been entered into between the parties, no proof of custom can be made to the contrary of its stipulations, to vary its binding force; and that it must be held binding between the parties, unless it be shown by their acts and conduct, they have mutually altered or rescinded it.—3 Brick. Dig. 152, § 146; 1 *Ib.* 394; *Warden v. L. & N. R. R. Co.*, 94 Ala. 285.

Our ruling in this case, on the former appeal, on the ad-
Vol. 97.

[Richmond & Danville R. R. Co. v. Hissong.]

missibility of evidence of custom theretofore between the
defendant and other employees, to show a waiver by the de-
fendant of its contract with the plaintiff, must be modified
in accordance with the principle herein announced.

The court erred in allowing the witness to testify as to
such custom and practice.

The defendant's objection and his exceptions to the ad-
mission in evidence of the American Tables of Mortality,
and to McNeely's testimony in identification thereof, were
without merit.—*McDonald v. Ala. Gold Life Ins. Co.*, 85. Ala.
401 ; *Gordon v. Tweedy*, 74 Ala. 232.

There was no error in the court reading, as a part of his
charge to the jury, the law as announced by us in this case,
when it was here before. The passages read seem to be the
law, and there could be no objection to them, for being read
out of the book.

The 18th assignment of error can not be sustained, be-
cause the sentence excepted to, together with the one follow-
ing, are necessary to be taken together, as constituting the
hypothesis upon which the court predicated its instructions
to find for or against the plaintiff. The two sentences are
connected by the conjunction "but," and may not be con-
strued separately, without doing violence to the first, and
must be held to be one, the last modifying or explaining
what went before.

The general charge asked by defendant was properly re-
fused. There was evidence tending to show that the engi-
neer knew, or had good reasons to believe, that the plaintiff
was between the cars.

Charge No. 2 was properly refused since it assumed as a
fact, that Barton was directing the movements of the engine
and train.

Charges 10 and 11 refused, from what has already been
said, will appear to have been proper charges, and as appli-
cable to the particular conditions of this case, should have
been given.

A motion was made in the case for a new trial, on the
ground, among others, that the verdict of the jury was con-
trary to the evidence. The court overruled it. As the cause
must be reversed, we refrain from passing on this motion.
We simply declare the rule as heretofore announced to be,
that if, "after allowing all reasonable presumptions in favor
of its correctness, the preponderance of the evidence against
the verdict is so decided as to clearly convince the court that
it is wrong and unjust," it ought to be set aside.—*Cobb v.
Malone*, 92 Ala. 631.

13-97.

[Western Railway of Alabama v. Mutch, Adm'r.]

For the errors pointed out, the case must be reversed and remanded.

On the application for a rehearing, the opinion, as at first prepared, is corrected, and the application is denied.

Reversed and remanded.