# Louisville & Nashville Railroad Co. v. Mothershed, Admr.

*Action for Damages against Railroad Company, by Administrator of Deceased Employé.*

1. *Contributory negligence in violation of rule by employé; there must be knowledge of the rule.*—The violation of a reasonable rule, adopted and promulgated by a railroad company, does not constitute contributory negligence on the part of one of its employés, unless he knew of the existence of such rule; and a plea which sets up such violation as contributory negligence, and does not aver that the rule was known to the employé, is demurrable.

2. *Same; not necessary for plea to aver negligent violation.*—Where the violation of a reasonable rule, adopted and promulgated by a railroad company, and which was known to its employé, proximately contributed to an injury to such employé, for which suit is brought, it is not necessary for the defendant in making good such defense to allege and prove anything more than that the failure to observe such rule, which was known to plaintiff, proximately contributed to his injury; and it is not, therefore, necessary for a plea setting up such defense to aver that said rule was "negligently" violated by the employé.

3. *Pleading; replications.*—Good pleading requires that replications should be either a general traverse of the allegations of the plea or pleas to which they are directed, or a confession of those allegations and an avoidance of their effect by new matter averred; and if by his replication a plaintiff pleads a traverse in special form, the facts relied on must be averred with such definiteness and certainty as to show legally the untruth or non-existence of the material fact or facts averred in the pleas intended to be denied.

4. *Railroads; rules of employment.*—A rule of a railroad company, which requires that certain class of its trains "must approach time-table stations under control, expecting to find the main track occupied," is applicable to and binding upon the engineers on such trains, notwithstanding under another rule of the railroad company the "general direction and government of the train is vested in the conductor;" there being no conflict in said rules, and the engineer, with the aid of brakemen who respond to his signals having the mechanical control of all trains.

5. *Same; same; evidence of custom or usage as to violations of such rules.*—Where a railroad company has adopted and promulgated an important and reasonable rule (such as requiring trains to be kept

[Louisville & Nashville Railroad Co. v. Mothershed, Admr.]

under control when approaching certain stations), and the employés to whom it is applicable have agreed in writing to observe and be governed by it, the binding force of such rule can not be altered or abrogated by proof that it was frequently and habitually violated by such employés; but to establish the abrogation of such a rule so agreed to by the employés, by silent acquiescence in its violation on the part of the officers authorized to act for the company. it must be clearly shown that the violations had been of such frequent and long continued occurrence, known and acquiesced in by such officers, as to raise clearly the just presumption that such officers, and the company through them, had assented to its disuse.

6   *Same; same; facts of present case.*—Where in an action against a railroad company to recover damages for personal injuries to an engineer, it was shown that the company had adopted and nine days before the accident promulgated a rule requiring trains to be kept under control when approaching time-table stations, and the engineer upon receipt of this rule, eight days prior to the accident, agreed in writing to observe it, evidence that prior to the promulgation of such rule and after its receipt by the engineer, it was customary for some of the employés of the defendant to disregard such rule, is insufficient to show that obedience to the rule on the part of the engineer at the time of the accident was waived by the company; and where it is shown that there was no effort on the part of engineer to keep his train under control when passing one of the stations specified in the rule, and that the accident causing his injury resulted from his failure to observe the rule, he is shown to be guilty of contributory negligence which precludes his recovery.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by W. H. Mothershed, as administrator of Thomas Edmunds, against the Louisville & Nashville Railroad Company, to recover damages for the killing of plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

The first count alleges the cause of the death of the intestate as follows: "And plaintiff's intestate while in the discharge of his duties as engineer in charge of one of the defendant's engines, which said engine was connected with and carrying one of the defendant's freight trains on said 18th day of May, 1891, on the defendant's said road near Phelan Station, that another train being operated and run by said defendant over its said railroad was run into and collided with the train on which the plaintiff's said intestate was then riding, and in said collision, plaintiff's said intestate was then

and there killed and received injuries from which he died immdiately by reason of the negligence of the conductor in charge and control of said train upon the defendant's said railway which collided with the train in which his said intestate was then situated." The negligence of the conductor is alleged to have been in his negligent failure to send a flagman back to notify approaching trains of danger as it was his duty to have done.

The second count is in substance the same as the first. The third and fourth counts are substantially the same as the first count. The fifth count of the complaint is substantially the same as the first, except "the person in charge or control of the train" is substituted for the conductor in each of said counts. The seventh count bases the right of recovery on the negligence of the flagman sent out to warn approaching trains of danger. The eighth count relies on the alleged negligence of the conductor of the train on which the deceased was engineer. The court charged the jury that there could be no recovery under the 7th and 8th counts of the complaint.

In the sixth count of the complaint, the negligence complained of was alleged as follows : "And plaintiff avers that the death of his said intestate or the injuries which resulted in his death, were caused by the negligence of some person in the charge of said freight train with which plaintiff's intestate's engine collided, which said person was then and there in the service and employment of the said defendant, and said freight train was detained or stopped on said railroad track at a place which was not a usual stopping place for said train, and that the person in charge thereof negligently, failed and neglected to send out a flagman with the proper danger signals, or to take such other precautions against accidents as were usual and proper to be taken in such cases, as his duty required him to do, and give the plaintiff's intestate warning that said train had been so stopped on said railroad, and that plaintiff's intestate's said engine, without fault on his part, ran into and collided with said freight train, which caused the injuries and death aforesaid. Wherefore plaintiff sues."

The defendant pleaded, first, the general issue, and

five special pleas. These pleas, as amended, and as copied in the transcript were as follows: "2. The defendant for further answer to the complaint says that the plaintiff's intestate's injury was caused by his negligent violation of a rule of the defendant, known to plaintiff's intestate, which required him as engineer to approach time-table stations with his train under control, expecting to find main track occupied, and the defendant avers that Phelan Station is a water tank, and was at the time of the alleged injury to the plaintiff's intestate a time-table station on the defendant's railroad, and defendant avers that the plaintiff's said intestate approached said station at such speed that he could not control said train, and ran into a train of the defendant standing on the main track, which proximately contributed to the alleged injuries to the plaintiff's intestate.

"3. The defendant for further answer to the complaint says that the defendant had adopted and promulgated the following rule, which was in force at and before the time of the alleged accident and which was known to the plaintiff's intestate, for the government of its employés in the management and control of its trains, viz.: 'All second and inferior class trains, including extras and following sections of first class trains, must approach time-table stations under control, expecting to find main track occupied.' Which rule is printed on the time-table of the defendant, and all its engineers are required to have one of said time-tables at all times when running a train, and the defendant avers that the train which was being run at the time of the alleged injury was a fourth class train, and that the plaintiff's intestate was the engineer in charge of the locomotive engine thereof, and the defendant further avers that Phelan is and was, at the time of the alleged injury, a time-table station on the defendant's railroad, and defendant further avers that said intestate negligently approached the station of Phelan, at the time of the alleged injury, at such rate of speed that he did not have his said train under control, and ran into another train of the defendant standing on the main track at said station, which proximately contributed to his alleged injury.

"4. The defendant for further answer to said complaint says, that the train alleged in said complaint with which the train of the plaintiff's intestate is alleged to have col-

lided,was standing at Phelan water station, at the time of said collision, and the defendant avers that said water station is a regular stop for all trains of defendant,and defendant further avers that the defendant had a printed rule on its time-tables for the government of the employés which was in force at and before the time of the alleged accident, as follows, towit: 'All second and inferior class trains including extras and following sections of first class trains must approach time-table stations under control expecting to find main track occupied;' and the defendant avers that the plaintiff's intestate knew of said rule, and negligently violated said rule as hereinafter set forth; and the defendant further avers that Phelan Station was a time-table station on defendant's road at time of the alleged injury to plaintiff's intestate; and the defendant avers that had said intestate observed or obeyed said rule, he would not have received the injury alleged in said complaint, and defendant avers that said intestate did not approach said station with his said train under his control and defendant further avers that his said failure to approach said station with his train under his control proximately contributed to his alleged injury and death.

"5. The defendant for further answer to said complaint says, that the train alleged in said complaint with which the train of the plaintiff's intestate is alleged to have collided, was standing at Phelan water station at the time of said collision, and the defendant avers that said water station is a regular stop for all trains of the defendant, and the defendant further avers that the defendant had a printed rule for the government of its employés on its time-table as follows: 'All second class and inferior class trains including extras and following sections of first class trains must approach time-table stations under control, expecting to find main track occupied;' that the time-table of the defendant in force at the time of said alleged injury to said intestate and which contained said rule, and said intestate had knowledge of said rule, was No. 22 which went into force at 3 o'clock p. m. on the 10th day of May, 1891, and which time-table and rule was in force at the time of the alleged accident; that on the 9th day of May, 1891, the said intestate signed the following receipt and agreement: 'We, the undersigned, acknowledge the receipt of S. &. N. A.

and B. M. R. R. time-card No. 22 to take effect 10th day May, 1891, at 3 o'clock p. m., and we hereby agree to read the rules and regulations contained in same, to post ourselves fully as to their requirements, and to be governed by the same during the time of our continuance in the employ of said company as long as the same may be in force, which receipt and agreement was signed by the plaintiff's intestate among other engineers, and the defendant avers that it was, at the time of the alleged injury operating said railroad under said time-table or card, and defendant avers that said time-table or card was delivered to said intestate on the 9th day of May, 1891. And the defendant further avers that Phelan Station was a time-table station on the defendant's road at the time of the alleged injury to the plaintiff's intestate ; and the defendant avers that had said intestate observed or obeyed said rules, he would not have received the injury alleged in said complaint, and defendant avers that said intestate did negligently approach said Phelan Station without having his train under his control, and defendant further avers that his said failure to approach said station with his train under his control proximately contributed to his alleged injury and death.''

The substance of the replications filed to these pleas, the demurrers to such replications, and the rulings thereon, are sufficiently shown in the opinion.

The following facts were proven without contradiction : That the plaintiff's intestate, at the time of the alleged injuries, which caused his death, was an employé of the defendant and had charge and control of one of its engines drawing the second section of a freight train ; that the first section of said freight train had been disabled for some cause, or was necessarily detained longer than it should have been at the water tank at Phelan ; that while said first section was detained at Phelan, and was occupying the main track of the defendant's railroad, the said second section approached said station at a rapid rate of speed and ran into the said first section which caused the injuries to plaintiff's intestate, of which he died in a few hours thereafter. That the second section passed through Cullman at a rate of speed from 25 to 30 miles per hour ; that it is down grade from Cullman to Phelan Station, which station is about two miles distant from Cullman. That the second section ran into

the first section on the 18th day of May, 1891, about day-
light; that the defendant's road is perfectly straight for
over one mile north of Phelan and to within 100 or 120
feet of the caboose of the train standing at Phelan; that
the said second section struck the first section with great
force and wrecked a large number of cars. That on the
9th day of May, 1891, the defendant delivered to Ed-
munds, the deceased, time-table No. 22, which was to
go into effect and force at 3 o'clock P. M. on the next
day, the 10th day of May, 1891. That said time-table
contained the printed rule set out in the 5th plea of the
defendant; that said Edmunds signed a written agree-
ment, at the time said time-table was delivered to him,
as set out in said 5th plea of defendant. That said time
table was in force on the day of the alleged accident, and
continued in force for several months thereafter; that
all the engineers of the defendant were required to have
one of said time-tables; that at the time of the alleged
accident and injuries, the defendant was having its rail-
road operated under said time-table; that Phelan Station
was a time-table station on the defendant's railroad, and
was at the time of the alleged injuries. That said Phelan
Station was a water station and a regular stop for all
trains of the defendant. The other facts of the case are
sufficiently stated in the opinion.

Among the charges requested by the defendant, to the
refusal to give each of which it reserved a separate ex-
ception, was the following: (1.) "If the jury believe
the evidence, they will find for the defendant."

There were verdict and judgment for the plaintiff, as-
sessing his damages at $4,418. The defendant appeals,
and assigns as error the several rulings of the trial court
to which exceptions were reserved.

HEWITT, WALKER & PORTER, for appellant.—The court
erred in sustaining the plaintiff's demurrer to the de-
fendant's second plea.—*Pryor* v. *L. & N. R. R. Co.*, 90
Ala. 32; *M. & C. R. R. Co.* v. *Askew*, 90 Ala. 5; *L. & N.
R. R. Co.* v. *Watson*, 90 Ala. 68.

2. Injury resulting to a servant from a violation of
an order of the master is *prima facie* negligence, and an
averment of the violation of the rule and knowledge of
the rule and injury resulting therefrom is an averment
of a good defense by the master as against his servant.

The violation of a known rule of the defendant by its servant would not preclude a recovery, provided the violation of the rule did not contribute proximately to the injury, but whenever a servant violates a rule of the master, known to him, and which he has agreed to observe while in the employment of the master, and injury results therefrom, or if such violation of such rule contributes to the alleged injury proximately, the servant has no remedy against the master. This is unquestionably the law when such rule is in force, and the servant is required to observe it, unless some intervening cause rendered its observance impossible, which is matter of reply, and the burden is on the servant to show and prove such intervening cause which rendered its observance impossible or impracticable.—*Pryor v. L. & N. R. R. Co.*, 90 Ala. 32; *M. & C. R. R. Co. v. Askew*, 90 Ala. 5; *R. & D. R. R. Co. v. Thomason*, 99 Ala. 471: *Sloan v. Ga. Pac. R. Co.*, 12 S. E. Rep. 179; *St. L., I. M. & S. R. Co. v. Rice*, 11 S. W. Rep. 699; *Norfolk & W. R. Co. v. Briggs*, 14 S. E. Rep. 753; *Francis v. K. C., St. J. & C. B. R. Co.*, 19 S. W. Rep. 935; *Abel v. President*, 103 N. Y. 581, 9 N. E. Rep. 325; *Sutherland v. T. & B. R. R. Co.*, 125 N. Y. 737; *Overby v. C. & O. R. R. Co.*, 53 Amer. & Eng. R. R. Cas. 417.

3. The replications filed to the defendant's pleas were insufficient. There was, at the time of the accident, a rule, which had been promulgated by the defendant, and which had been given to the plaintiff's intestate, by the violation of which rule the plaintiff's intestate proximately contributed to the injury complained of. The terms of this rule could not be varied by the evidence of a custom on the part of the defendant's employés to disregard the rule.—*M. & C. R. R. Co. v. Graham*, 94 Ala. 554; *E. T. V. & G. R. R. Co. v. Johnston*, 75 Ala. 604; *M. & E. R. R. Co. v. Kolb* 73 Ala. 396; 2 Greenl. on Evidence, § 251.

4. The demurrer to the 3, 4 and 5 pleas of the defendant, after amendment, as shown by the record, was overruled by the court, and the plaintiff filed several replications to them to which the defendant demurred. The demurrer to replications 1 and 2 were overruled and the overruling of each of these demurrers is assigned as errors on the record.—*M. & C. R. R. Co. v. Graham*, 94 Ala. 554; *E. T. V. & G. R. R Co. v. Johnston*, 75 Ala. 604.

[Louisville & Nashville Railroad Co. v. Mothershed, Admr ]

LANE & WHITE, *contra.*—1. The second plea of the defendant, as originally filed, was insufficient to present the defense intended to be set up, in that it did not aver that the plaintiff knew of the existence of said rule at the time of the accident, and it was necessary that this averment should have been made.—*R. R. Co. v. Hawkins,* 92 Ala. 241; *R. R. Co. v. Perry,* 87 Ala. 392; *Railroad Co. v. Propst,* 83 Ala. 518; *Railroad Co. v. Graham,* 94 Ala. 545; *Standard Life Ins. Co. v. Jones,* 94 Ala. 434. The other pleas should have averred that the plaintiff negligently or carelessly or willfully violated the rule set out therein.

2. The act charged to the plaintiff's intestate must have been either careless or willful. To approach Phelan's station without having his train under control, without averring that he approached the station either carelessly or negligently, which means the same thing, or willfully, does not make him guilty of contributory negligence. In other words, unless the act or conduct of the plaintiff's intestate was necessarily dangerous, then it was necessary to aver that he did the act either carelessly, negligently or willfully. The doing of an act which is not *per se* negligent, will not be negligent unless that act be carelessly, negligently or willfully done. Without the averment in the plea that the plaintiff's intestate carelessly, negligently or willfully approached said station without having his train under control, the plea would have entitled defendant to have recovered on that issue by simply showing that the train was not under his control; whereas it might have been that he could not control the train (as the proof really shows, in this case, he could not), or that some other impending necessity caused him to approach this station in the manner aforesaid. Whether an act or conduct is negligent depends upon the circumstances surrounding the party at the time. What would be negligence under some circumstances, would not be under others.—*Penn. Co. v. Roney,* 89 Ind. 453, s. c. 46 Amer. Rep. 173; *Cottrill v. R. R. Co.,* 47 Wis. 634, s. c. 32 Amer Rep. 796.

3. The replication is a complete answer to the alleged violation of the rule of the defendant set out in said pleas, and is exactly in accord with the principle announced in *R. & D. R. R. Co. v. Hissong,* 97 Ala. 191, wherein it is said: "It is not to be disputed that a rule may be shown by parol evidence to be of no force

and effect by its general non-observance, and by the continual and well known acquiescence of the company in its non-observance. If rules are promulgated as shams, with no intention on the part of the company making them to have them complied with, but gotten up as a basis of a convenient and simulated defense when sued by some one injured from a failure to observe them, they ought to be treated as they deserve, as if never made, and of no force and effect.'' The rule, however, in the case last cited, forbade the servant from doing an obviously dangerous thing, and, of course, a violation of it could not be excused by showing that it had been habitually violated. To the same effect are the cases of *M. & C. R. R. Co. v. Graham*, 94 Ala. 545; *Andrew's v. B. M. R. R. Co.*, 99 Ala. 438; *Hill v. B. U. R. R. Co.*, 10 J Ala. 447.

HEAD, J.—The sixth count of the complaint identifies the person alleged to have been gulity of the negligence causing the injury as the person in charge of the particular freight train which had been stopped on the track, at the specified time and place, and with which intestate's train collided. We deem it unnecessary to decide whether or not this is a sufficient identification of the person charged with the negligence. See *Railroad Co. v. George*, 94 Ala. 214. The amendment of the second plea, after demurrer sustained, by which the words, ''known to plaintiff's intestate,'' were inserted, was necessary to make the plea good; and the demurrer to the plea, as the latter was originally filed, was properly sustained. By the ruling of the court on demurrer, the defendant was required to amend its third plea by inserting the word ''negligently'' where the same occurs in the plea as copied in the transcript; and to amend its fourth plea by inserting the words, ''and negligently violated said rule as hereinafter set forth,'' where those words appear in said plea, as copied. These pleas set up, in terms, a rule of the defendant known to plaintiff's intestate, in force at and before the injury, and applicable to the place of the injury, which was a water station, and to the train of which plaintiff's intestate was engineer, at the time he was killed by the collision of that train with another, by which rule it was required that such trains must approach such stations ''under control, expecting to find the main track occu-

pied.'' The violation of this rule by the plaintiff's intestate, as engineer of the moving train, proximately contributing to his death, is alleged. The demurrer takes the position, and it is supported here by earnest argument by counsel for appellee, that the mere violation of the rule, proximately contributing to the injury, was, without more, insufficient to render the engineer culpable, in such sense as to affect his personal representative's action for the defendant's negligence causing the injury; that the failure to observe the rule must have been either an expressly willful default, exerted without regard to the danger intended by the rule to be provided against, or that the promulgation of the rule invested the engineer with a reasonable discretion in respect of its observance, to be exercised as an ordinarily prudent person would have done under the circumstances; and that it was, therefore, necessary that the pleader should not stop with the allegation merely that the rule was not observed, thereby contributing to the injury, but should have gone further, and alleged that the omission was willful or negligent, within the principle contended for. The trial court accepted this view, and, by the effect of its ruling upon the demurrer, required the defendant to make the amendments to which we have referred. It may be, and probably will be, said that if the original pleas showed a failure of duty on the part of the engineer, the characterization of that failure as ''negligent'' added nothing to the allegation; but it is manifest, from the manner in which the question was presented, that the amendments were regarded by appellee's counsel and the court as imposing upon the defendant the necessity of a further measure of proof, in line with the principle contended for, than did the mere allegation of non-observance of the rule, and that view seemed to have pervaded the subsequent proceedings in the cause. We may as well, therefore, dispose of the question here, by consideration of the ruling upon the demurrer, as elsewhere.

That the rule, as set up in the pleas, is a just and reasonable one, no one will, for a moment, gainsay. The end and obvious tendency of its promulgation and enforcement was the all-important one of avoiding great peril of life and property. The highest considerations of duty to its employés, the general public, and itself,

impelled the defendant to its adoption. Being promulgated, and no unforeseen emergency arising which would render obedience to it in a given case impracticable or disastrous, all discretion as to the necessity of obedience was exhausted. The engineer having the means of observance, the rule was mandatory upon him. He had no right to inquire whether the surroundings seemed to render obedience necessary. It matters not, therefore, whether his disobedience was expressly willful, or inadvertent, or resulted from a reasonable belief, in his mind, that in the given instance obedience was unnecessary. He was equally culpable in either event. It is known that the engineer, with the aid of brakemen, has the mechanical control of the train's movement. As the rule appears in the pleas, it binds him. His failure to conform to it is *prima facie* wrong. If any accident, dereliction of brakemen or other trainmen, or other cause intervenes to prevent conformity, such cause is special matter of excuse or justification, and must be alleged and proved by him who may rely upon it. This is a principle universally accepted in the common law. If, for instance, a person who fills the office of sheriff seizes and sells the goods of another, he is *prima facie* a trespasser, though it is known that he may justify under legal process. The seizure under regular process is special matter of defense, and must be so pleaded. If one assaults another, it is *prima facie* wrongful, though it may be justified by special matter of self-defense, which, in civil actions, must be specially pleaded. These and many other instances illustrate the principle. If, therefore, the engineer's failure to observe the rule was excusable for any cause, it was special matter, to be set up by replication to the pleas. It was not upon the defendant to allege or prove more than the failure to observe the rule, known to the party charged, proximately contributing to the injury. The fifth plea set up the same rule, and its application to the time, place, train in question, and further alleged, in substance, that the same, with other rules, was printed in a printed time-card of the defendant which went into effect on May 10, 1891, at 3 o'clock P. M., and that, on May 9, 1891, plaintiff's intestate received one of said cards, and signed a receipt and agreement, by which he acknowledged receipt of the same and agreed

to read the rules and regulations contained in the same, to post himself fully as to their requirements, and to be governed by the same during the time of his continuance in the employ of said company, as long as the same should be in force; that, at the time of the injury, which, the complaint shows, occurred on May 18, 1891, the defendant was operating its railroad under said time-card. The plea regularly alleged violation of this rule proximately contributing to the injury. By a similar ruling on demurrer, the defendant was also required to qualify the violation by the insertion of the word "negligently"; and what we said in reference to the other pleas is applicable here on that point.

To these pleas (2, 3, 4 and 5) plaintiff filed replications numered 1, 2, 3, and 4. The third and fourth went out of the case on demurrer. After demurrer overruled to the first and second, issue was joined on them. The first set up that defendant habitually permitted said rule to be violated, and did not require the observance of said rule by its employés in the running of defendant's trains at Phelan Station, where the injuries occurred; the second, that said rule was addressed to and was obligatory upon defendant's conductors only, and was not addressed to or obligatory upon defendant's engineers in charge of its engines. There was no general replication to the pleas, and the cause was tried alone, as far as the pleadings show, upon the issues tendered by these two replications. Their sufficiency was first challenged by demurrer, complaining, substantially, that the first failed to state the facts which manifested the defendant's permission of the violation of the rule; that it does not appear that such permissive violation existed prior to the injury, nor that it existed between the 10th and 18th days of May, 1891; that it does not appear that such permissive violation extended to the plaintiff's intestate; that it does not appear that defendant released the intestate from the agreement set up in the fifth plea, and did not require its observance by intestate after the agreement was entered into; that said replication is no more than a traverse; that, as to the second replication, the fifth plea requires a sworn denial of the execution of the agreement set up therein, and there is no such denial; that the fact that the rule was not addressed to the engineers does not show it was

not binding upon them; that the averment that the rule was not obligatory upon the engineers is the statement of a conclusion, and not of fact; and that there are no facts in avoidance set up. It is apparent, we think, that neither of the replications comes up to the demands of good pleading. Each is a limited traverse, confessing all other allegations. It is not a general traverse, nor a confession and avoidance by new matter. Pleas in bar, or replications thereto, must be one or the other of these latter. The first replication confesses that the rule set up in the pleas was promulgated, that it applied to engineers, that it was known to and not observed by the intestate, and that its non-observance proximately contributed to the injury. It further confesses that the intestate received the time-card with the rule thereon printed, and entered into the written agreement, as set up in the fifth plea, on May 9, 1891, binding himself to read, post himself as to, and be governed by, the rule; and that the injury occurred on the 18th day of May thereafter, to which his failure to observe the rule proximately contributed. It seeks to avoid the allegations so confessed, not by an averment of new matter, but, in substance, by the traverse of the allegation that the rule was in force at the place of injury; the replication being, in effect, that the rule was discontinued by the fact that, at some undefined time, the defendant habitually permitted it to be there violated, and did not require its observance by its employés in the running of trains there. The second replication confesses all the allegations of the pleas to which we have referred, except that the rule was obligatory upon the engineers, which it traverses by stating, by way of fact, that the rule was not addressed to, and, by way of conclusion, that it was not obligatory upon, defendant's engineers, in charge of its engines. All that is sought to be set up by these replications, as answers to the pleas, could have been proven under a general replication. They present no matter for special reply. But, if it be not legally objectionable to plead a traverse in special form, and that form is resorted to, the facts must be stated with such definiteness and certainty as to show, legally, the untruth or non-existence of the material fact or facts intended to be denied. A statement of conclusions merely is not sufficient.

[Louisville & Nashville Railroad Co. v. Mothershed, Admr.]

The question which appears to us, however, as most important, and, viewed in connection with the evidence, as conclusive of the cause, is, what effect is to be attributed to the agreement set up in the fifth plea? By way of preliminary consideration, we remark, as we have before stated, that it is judicially known that the engineer, with the aid of brakemen, whom he must signal to his service, has the mechanical control of the train's movement. He alone, with such aid, it may be, can keep the train under control, within the meaning of the rule. It is he, more especially, whom the rule warns to expect the track to be occupied at such places. If a passenger or other person were suing for an injury alleged to have been caused by the failure of the engineer to observe this rule, we apprehend no court or jury would hesitate to declare, upon the face of the rule itself, that it was intended for the government of the engineer. In addition to this, another of the printed rules, *in pari materia* with the one in question, as shown by the evidence, provided that "conductors and enginemen will be held equally responsible for the violation of any of the rules governing the safety of their trains; and they must take every precaution for the protection of their trains, even if not provided for by the rules." The defendant also introduced another rule of similar import, and the evidence in the case is to the same effect. There is nothing in rule 133, introduced by plaintiff, in conflict with those under consideration. It provides that the "general direction and government of the train * * * is vested in the conductor. He is held responsible for its safe and proper conduct, and all men employed on the train are required to yield a willing obedience to his proper orders." There is not the slightest conflict in these rules, nor the shadow of reason for declaring that the duty of the engineer to keep the train under control when approaching the station in question was in any wise impaired. It might as well be argued that the conductor only is responsible for the failure of the engineer to sound the whistle for a station or road crossing, or to sound the cattle alarm when stock are upon the track, or to perform any other of the duties which peculiarly appertain to his position, as to contend that the conductor is alone responsible for the engineer's failure to keep his train under control at a particular

place. If, by reason of particular facts, the conductor was alone responsible, to the entire exculpation of the engineer, it was upon the plaintiff to allege and prove the facts; and in that regard it is observable that the engineer is required to obey only the proper orders of the conductor. With no pending emergency, rendering unusual and independent action imperative, it is not perceivable how a conductor could properly command the violation of a known, important rule of the company, or how an engineer would be required to obey it. The inquiry, then, is whether there was evidence tending to show that the rule which the plaintiff's intestate agreed to observe was not in force at the time of the injury. The defendant's evidence is all to the effect that the rule was in full force at that time and required to be observed. The plaintiff introduced evidence tending to show that, for a period of a year or two prior to the accident, up to the time of the accident, about one-half of the freight trains passed Phelan station without stopping; that they would run through about like they would on any other part of the road—about 25 or 30 miles per hour. The testimony of the defendant's officers who were authorized to act in the matter went to show that they never authorized or sanctioned the violation of the rules by the engineers; and there was no conflict in this evidence, unless it be that there was testimony tending to show that they had the means of detecting the rate of speed of any train at any place on the road.

But, proceeding to the agreement in question, this court has heretofore settled the law quite clearly on this subject. In *Railroad Co. v. Hissong*, 97 Ala. 187, we had under consideration a rule which prohibited car-couplers to go between cars to couple them, a violation of which was alleged against the plaintiff as contributory negligence. The plaintiff's effort was to avoid the effect of the violation by showing a long-continued custom of defendant's employés to violate the rule, under certain circumstances, and to establish the inference therefrom of defendant's acquiescence in such violations, and a waiver of the observance of the rule. The plaintiff, a very short time before the injury, had entered into a written agreement with the defendant binding himself to observe the rule. This court, by Justice HARALSON, discussed the

question fully, and concluded its opinion with the following language : ''If rule 20 by long non-observance had gone into disuse, and was a regulation of the company by name only, and no longer binding, we know of no law which, notwithstanding, prevented the parties from making it the basis of their contract for plaintiff's service, and if *bona fide* entered into, how proof of any custom theretofore existing to the contrary might set aside and annul the deliberate engagements of the parties. Surely, this would be making their contract for them, and denying them the privilege. We must hold, therefore, that when a contract of the kind we are construing has been entered into between the parties, no proof of custom can be made to the contrary of its stipulations, to vary its binding force, and that it must be held binding between the parties, unless it be shown, by their acts and conduct, they have mutually altered and rescinded it.—3 Brick. Dig. 152, § 146; *Warden v. Railroad Co.*, 94 Ala. 285. Our ruling in this case, on the former appeal, on the admissibility of evidence of custom theretofore between the defendant and other employés, to show a waiver by the defendant of its contract with the plaintiff, must be modified in accordance with the principle herein announced. The court erred in allowing the witness to testify as to such custom and practice.'' The undisputed evidence shows that the rule now in question was republished and again promulgated on the 9th day of May, 1891, to take effect the following day; that plaintiff's intestate on that day receipted in writing for a copy of it,·and agreed in writing with the defendant to observe it so long as he should remain in the defendant's service, or the rule should be continued in force. The injury occurred on the 18th of the same month—a period of nine days after the republication and agreement. There was no evidence from which it could be inferred, during that period, at least, if it were conceded that there was such evidence as to the time anterior, that the defendant rescinded, altered, abrogated, or waived the rule. If, during that period, the reading of the indicators showed undue speed of any train approaching the station, there was no proof of it; and, moreover, the indicator reports are made to the superintendent monthly, and there is a total want of evidence that a report was made from May 9th to 18th. To establish

the abrogation of a plain, important rule like this, which the employé has solemnly agreed in writing to observe, by silent acquiescence in its violation on the part of the officers authorized to act, it should be shown clearly that the violations had been of such frequent and long continued occurrence, known to such officers, and acquiesced in by them, as to raise clearly the just presumption that such officers had assented to the disuse of the rule. There is absolutely no evidence to bring this case within this principle, if, indeed, it be not inconceivable how, in a system of such proportions as the operation of a railroad from Decatur to Montgomery, such a presumption from acquiescence can arise within so brief a period as nine days. There is no reason for a supposition that the rule was adopted as a sham or mere pretense, as suggested. It is manifest, as we have said, that it is one of great importance. The plaintiff's intestate lost his life by his failure to observe it—a life which would have been saved by its simple observance.

If it be conceded that a special replication, setting up matter of excuse for the failure to comply with the rule, was waived by the course the trial took, there was no evidence whatever of such an excuse. There is no evidence whatever of an effort on the part of the engineer to keep the train under control, nor of the failure of any brakeman or other trainman to respond to any call made by him for brakes or other assistance. The fact that brakemen were not at the brakes as the train approached Phelan is no evidence of action on the part of the engineer calling them to their places. It rather implies, if anything, non-action on his part in that regard. We can find in the record no evidence indicating in the slightest degree a legal excuse for not complying with the rule. That the conductor of the train standing at Phelan was guilty of culpable negligence goes without saying, under the evidence adduced; but, as the case now comes before us, the contributory negligence of the intestate bars recovery by the plaintiff. The general affirmative charge should have been given for the defendant. We deem it unnecessary to pass upon the several assignments of error.

Reversed and remanded.