## Louisville & Nashville Railroad Co. v. Mothershed, Adm'r.

*Action for Damages for Death Caused by Negligence.*

1. *Replication; when not a departure from the complaint.*—A complaint by an administrator against a railroad company for negligence causing the death of the intestate, alleged that the conductor of a delayed train, which was standing at a station of the road, failed to send back the flagman with signals to

[Louisville & Nashville Railroad Co. v. Mothershed, Adm'r.]

give notice to the intestate, the engineer of a following train, of the presence of the first train at the station, and that the flagman failed to go back and give this signal, as it was their duty respectively to do, and that of consequence a collision occurred and the intestate was killed. A plea was interposed that it was the duty of the intestate, by a rule of the company known to him, to approach the station with his train under control expecting to find the main track occupied, and by his failure to obey this rule the collision occurred. Replication to this plea was that, the failure of the intestate to have his train under control was without fault on his part, that his train was supplied with hand brakes only, and that the brakeman refused and neglected to apply the brakes when approaching the station, and when called on by proper signal to do so; and that the train would have been brought under control if the brakes had been applied. *Held*, that the replication did not set up a cause of action at all, and was not a departure from the cause of action counted on in the complaint.

2. *Under control; meaning of in rule of a railroad company addressed to its employes* —A rule of a railroad company "that trains must approach time table stations under control, expecting to find the main track occupied," is addressed alike to the conductor, engineer and brakeman. It does not require absolute results from any of the employés to whom it is addressed, but only that each one of them shall do all that is in his individual power to produce the result contemplated, to bring the train under control, and when any one of them has thus exerted himself he has complied with the rule, and so far as he is concerned the train is under control within the meaning and intent of the rule.

3. *Replication may be filed after the trial is begun.*—Where a replication to a plea was offered before the examination of witnesses was begun, and was rejected by the court, and the court afterwards, when the evidence was being received, determined that the replication should have been allowed when offered, and permitted it then to be filed, there was no error.

4. *Same.*—Charges which affirmatively hold an engineer absolutely responsible for having his train under control, or which tend to mislead the jury to that conclusion when they have a right to find that he was in no degree at fault in that connection, are properly refused.

5. *Engineer; when not negligent in calling brakes.*—A charge is properly refused which asserts that an engineer is remiss in not calling for brakes at a greater distance from a station than three-quarters of a mile, when it is shown that had the

brakes been applied at that distance the train could have been brought under control; or which tends to mislead the jury to pretermit the consideration of evidence that while there was no regular call for brakes there was notice to the brakemen by the whistle that the station was being approached given a mile from the station.

6. *A charge is bad which requests a verdict on certain evidence when there is conflict on other evidence on same matter.*—A charge which requests the court to instruct the jury that if they believe a train was running at forty miles an hour immediately before the whistle was sounded for a station they must find for the defendant, in a suit for negligent killing the engineer by a collision at the station, is properly refused when the evidence is not without conflict on the question whether the train could have been brought under control even if running at forty miles an hour.

7. *Charge bad which requests verdict on evidence subject to two interpretations.*—A charge which instructs the jury to find the evidence a certain way when on that point there is evidence from which a different interpretation could be reached, is properly refused as misleading.

8. *Abstract and inaccurate charges should be refused.*—An abstract or argumentative charge should be refused; and so of a charge which is inaccurate when tested by the evidence.

9. *Res gestae; what is.*—It is not error in the court to admit incidentally testimony that three persons were killed in a collision in which the engineer was killed for whose death the suit is brought—it is of the *res gestae* of the occurrence.

10. *Error in admitting evidence when cured.*—If the court commits error in sustaining objection to the admission of evidence but afterwards admits the evidence the error is cured.

11. *Evidence not possibly injurious no ground of reversal.*—Evidence which under the circumstances of the case could not possibly injure the defendant, or which was not impertinent to the averments of the counts which were in the case when it was admitted and complained of, is not a ground for reversal.

12. *Same.*—Testimony introduced by plaintiff in a case of killing by negligence that the defendant sent for a doctor after the collision, though irrelevant, was beneficial to the defendant and its introduction could not prejudice him, though admitted against his objection.

13. *Reversing engine; when evidence admissible to show it to be dangerous.*—Evidence going to show that it is dangerous to reverse an engine cannot be complained of by the defendant

when he insists that it was the duty of the engineer to have his train under control without resorting to reversing the engine.

APPEAL from the City Court of Birmingham. Tried before the Hon. H. A. SHARPE.

Action by W. H. Mothershed as the administrator of Thomas Edmunds against the Louisville & Nashville Railroad Company to recover damages for the death of the intestate caused, as alleged, by the negligence of the defendant company. At the time of his death the intestate, as locomotive engineer, was running a freight train on the defendant's road. From Cullman south to Phelan's Station, some two and a half miles, the road descends in grade, except at a point about equi-distant from the places mentioned, at which there is a level grade of no considerable length, known as the "sag" or "swag." Preceding the train of Edmunds, at the time of the accident, was another train, the first section of the train of which Edmunds's train was the second section, which had been delayed at Phelan's. Edmunds's train ran into this delayed train, and he was killed. The complaint contained several counts, but the court gave the affirmative charge to the defendant on all of them except the first and seventh. It was to the presence of these counts in the case, which were eliminated by the charges of the court, that reference is made in the opinion in speaking of the refused charges 10 to 13. The two counts one and seven, the plea thereto of contributory negligence and the replication of the plaintiff are all set out in the opinion. The replication was offered by the plaintiff before any evidence was introduced, but refused by the court. Afterwards and during the introduction of the evidence, the court remarked that the refusal of the replication was error, and then permitted the plaintiff to file it.

There was evidence tending to show that the whistle was blown for Phelan's Station one mile before reaching it, but it was not a regular call for brakes; and further that when the brake call was made soon thereafter, and many times repeated, the brakemen failed to apply the brakes; and that had they done so the train would have been put under control and the collision prevented;

and that Edmunds reversed his engine and did all in his power to control his train. There was also evidence tending to show that the train was running forty miles an hour when the whistle was blown for the station, but this was controverted. The other facts, as well as a number of special charges refused to the defendant are sufficiently set out in the opinion.

Charge 9 refused to the defendant asserted that verdict should be for the defendant if the jury believed that the train of the deceased was running at forty miles an hour immediately before the whistle was blown for the station. Charge 20 asserted it to be the duty of Edmunds to blow for brakes between Cullman and the "sag."

Charge 21 was, "If you believe the evidence you must find that the engineer Edmunds did nothing to check the speed of his train until he gave the signal for brakes, and that his train was then going down the hill or grade just north of Phelan's."

Charge 14 asserted that Edmunds was charged with notice that the front section of train number 15 was standing on the main track at Phelan's Station.

Rules 30, 31 and 97 referred to in the opinion describe danger signals and their use, and relate also to the duty of the flagman to warn following trains.

THOS. G. JONES, for appellant, cited this case as it appears reported in 110 Ala. 143.

LANE & WHITE, *contra*, cited Chitty's Pleading, 16 Am. Ed. Vol. 1, p. 674.

McCLELLAN, C. J.—It is alleged and proved to have been the duty of the conductor of defendant's train standing at Phelan's Station to send back the flagman 2700 feet with signals to give plaintiff's intestate, Edmunds, the engineer of a following train, notice of the presence of the first train at Phelan's, and it is also alleged and proved that it was the flagman's duty to go back and give this signal. The first count is upon this duty as being on the conductor. The 7th refers it to the flagman; and they severally charge that it was not seas-

onably performed by either, and that of consequence a collision occurred and Edmunds was killed; and there is evidence tending to support each of said counts. The defendant interposed the following plea, among others: "4th. The defendant for further answer to said complaint says, that the train alleged in said complaint with which the train of the plaintiff's intestate is alleged to have collided was standing at Phelan water station at the time of said collision, and the defendant avers that said water station is a regular stop for all trains of defendant and defendant further avers that the defendant had a printed rule on its time tables for the government of the employés, which was in force at and before the time of the alleged accident, as follows, to-wit: 'All second and inferior class trains including extras and following sections of first class trains must approach time table stations under control expecting to find main track occupied,' and the defendant avers that the plaintiff's intestate knew of said rule and negligently violated said rule as hereinafter set forth; and the defendant further avers that Phelan Station was a time table station on the defendant's road at the time of the alleged injury to the plaintiff's intestate; and the defendant avers that had said intestate observed or obeyed said rule, he would not have received the injury alleged in said complaint, and defendant avers that said intestate did not approach said station with his train under his control, and defendant further avers that his said failure to approach said station with his train under his control approximately contributed to his alleged injury and death."

There were some replications to this plea interposed before the first trial of the case. On that trial there was judgment for the plaintiff, and an appeal was taken to this court. It was here held that the replications were bad, and that the defendant was entitled to the affirmative charge on its said plea of contributory negligence. *Louisville & Nashville Railroad Co. v. Mothershed, Admr.,* 110 Ala. 143. On the last trial the plaintiff interposed the following replication to the plea of contributory negligence: "8th. For further replication to said 2nd, 3rd, 4th and 5th pleas plaintiff says that the cars in said train upon which plaintiff's said intestate

was employed as engineer was equipped with hand brakes and with no other brakes; that it was part of the regular business of the brakemen on said train when approaching said Phelan's Station from the north to be at said hand brakes and by the use thereof to aid in controlling the speed of said train, when approaching said station, and there were three brakemen employed as such upon said train; and it was part of the regular business of said brakemen to apply brakes while the train was so approaching said Phelan's Station without being signalled to do so; and it was part of the regular business of said brakemen to apply brakes when signaled to do so by plaintiff's intestate; that by the application of said hand brakes by said brakemen together with what plaintiff's intestate did as herein set out, would have caused said train to have been under control when said train approached said Phelan's Station, as required by the rule of said defendant set out in said pleas; that before reaching Phelan's Station, the place where said accident is averred to have occurred in said complaint, in time by the aid of such brakes to have put his train under control before reaching said station, plaintiff's intestate signaled the brakemen or crew on said train to apply the hand brakes on said train; that he reversed his engine and applied steam, and did all in his power to check the speed of his said train and put the same under his control; and that he continued to call for brakes while he approached said station, but the brakemen or some of them wholly failed to apply said brakes and that by reason thereof plaintiff's intestate did not have said train under control when approaching said station at the time said accident occurred; that the failure to have said train under control was not the fault of plaintiff's intestate, but was by reason of the brakemen and other members of the crew on said train failing to apply the brakes as aforesaid."

The defendant demurred to this replication, assigning two grounds, as follows: "1. The facts averred in said replication are a departure from the cause of action set up in the complaint. 2. The alleged negligence of the brakemen did not excuse the plaintiff's intestate from his negligence in failing to comply with the rule requir-

ing him to have his train under such control when approaching Phelan's as that it could be stopped if he found the main track occupied there." The judgment overruling this demurrer is the subject-matter of the first assignment of error.

The theory of the first assignment of demurrer is that the plaintiff in this replication bases his right to recover in the action upon the negligence of the brakemen on the intestate's train when in the complaint recovery is sought on acount of the negligence of the conductor and flagman of the other train. This is an untenable position. No recovery is attempted to be predicated on the omission of duty on the part of the brakemen alleged in the replication; but the averment of such omission performs the entirely different office in the case of ascribing the failure to have the train under control as it approached Phelan's Station to the non-feasance of the intestate's fellow-servants to his own exculpation from all blame in respect thereto. The plea says to plaintiff, you are not entitled to recover because your intestate was under a duty to have his train under control as it approached Phelan's Station; he failed to discharge this duty, and had he discharged it, there would have been no collision and he would not have been killed. The reply is that the intestate did all that was in his power to have the train under control, thus fully discharging the duty that rested upon him, and that the failure to have the train under control was due to the wrong and negligence, not of himself, but wholly of other employés of the defendant charged equally with him to perform this duty, and hence, the plaintiff further says, he should not be barred a recovery for these acts or omissions of fellow-servants for whose wrong and negligence his intestate was in nowise responsible. The claim of the plaintiff as well after the replication was interposed as before was that the negligence of the conductor and flagman of the stationary train wrought the injury complained of. The plea set up that the deceased had contributed to that injury by failing to observe a rule of the employment by a proper observance of which the injury would have been avoided notwithstanding defendant's negligence. The replication is that the failure to observe the rule

was not the fault of deceased, but of third persons whose negligence is not imputable to deceased and for whose wrong he is not to be held accountable. This is not to claim damages for the negligence of the brakemen, but to protect an otherwise good claim for damages against emasculation through conditions existing by their fault alone in violation of a rule. The point finds illustration in the case of *Elyton Land Co. v. Mingea*, 89 Ala. 521, where the plaintiff sought to recover for injuries resulting from a defective highway, and the defense was made that the vehicle upon which he was riding was driven negligently and carelessly, but for which Mingea would not have been thrown from it and hurt, notwithstanding the defects complained of. It was held to be a good answer to this defense of contributory negligence that the vehicle was being driven by a third party whose negligence was not imputable to Mingea; and no suggestion was made that the use of the third party's negligence by the plaintiff not as a new cause of action, but to meet a defense against the cause of action set up in the complaint was a departure. And it may be further illustrated thus: Let air brakes be substituted on Edmunds' train for the hand brakes and brakemen with which it was equipped and manned. Let it be supposed there was a latent defect in the air brakes which developed itself the moment he seasonably attempted to apply them to bring his train under control with a view to stopping short of Phelan's Station so that although he did everything that was proper to be done at the proper time to the end in view, the brakes could not be applied, and, of consequence, the train could not be brought under control. Surely in such case the plaintiff in setting up the failure of the air brakes to work in answer to a plea imputing contributory fault to Edmunds in not having his train under control, would not be relying upon the defect in the brakes as a ground of recovery, and this regardless of whether the defect resulted from the negligence of the defendant or others of its employés or not. And that in principle is precisely the case we have here. And upon these considerations we base our conclusion that the replication does not set up

a cause of action at all, and is not a departure from the cause of action counted on in the complaint.

The rule deceased is alleged to have violated is addressed to and was for the government not only of the engineer of a train, but all the employes engaged in running the train, and so it does not prescribe that the engineer alone shall have the train under control, but that "trains must approach time-table stations under control expecting to find the main track occupied," thus imposing the duty of bringing about this condition of control alike upon the engineer, the conductor and the brakeman. Upon no one of these employés was the absolute accomplishment of this condition imposed. All were charged to contribute to it, but no one of them could be or was singly and alone expected by the company or commanded by this rule to bring the train under control. All that any one of them could do or was commanded by this rule to do was to use every means in his power to have the train in hand on approaching one of the stations mentioned in the rule. If one brakeman beginning at the proper time set up all the brakes he could get to, and other brakemen failed to discharge their like duty, and a collision resulted in consequence, no fault could be imputed to the diligent brakeman for failing single handed to accomplish the task, requiring the combined efforts of all the trainmen, of bringing the train under such control as to enable them to stop it short of the station they were approaching. And so if all the brakemen did their full duty and set up all the brakes to the last degree of tension, but the engineer forced the locomotive forward so as that the brakes did not have the effect of putting the train under control, it would be absurd to say that the brakemen were responsible for a disaster resulting from the train not being under control. And so it would be as obviously absurd to hold the engineer answerable for a collision resulting from the train not being under control when he had not only used every appliance and resorted to every effort to that end which he could directly employ, but also had in every way possible called on the brakemen to do their duty, and the want of control was due directly to the failure of the brakemen to apply their brakes. It is, we

suppose, safe to assume that a heavy freight train running at the customary speed down an ordinary grade could not be brought under control by one brakeman setting his brakes while the other brakes are left off, and the engine forges ahead and it would be the height of unreason to hold the brakeman who thus performed his full duty responsible for the utter dereliction of his fellow-servants. A rule so providing would be bad and inoperative for unreasonableness. To construe the rule we have here to have that effect would be to inject vitiating infirmity into it. The only reasonable construction of it, the only interpretation upon which it can stand at all is that it does not require absolute results from any of the employés to whom it is addressed, but only that each one of them shall do all that is in his individual power to produce the result contemplated, to bring the train under control; and when any one of them has thus exerted himself he has complied with the rule, and so far as he is concerned the train is "under control" within the meaning and intent of the rule. There being thus no absolute requirement upon Edmunds to have the train under control, but only a requirement that he do all in his power to that end, the second assignment of demurrer to the replication is also without merit; and the court properly overruled the demurrer.

The action of the trial court in allowing this replication to be filed after the trial had been entered upon and witnesses had been examined involved no error, certainly none available to the appellant here. Moreover it is to say the least extremely doubtful whether the replication sets up any matter which could not have been brought forward on a mere joinder in issue on the pleas of contributory negligence.

It is sufficient to say in condemnation of charges 3, 4, 5, 8, 16, 17, 18, 19, 23 and 24 refused to the defendant that they severally either affirmatively hold the engineer absolutely responsible for the train not being under control or tend to mislead the jury to that conclusion, when the jury had a right to find that he was in no degree at fault in that connection.

The affirmative charge on the whole case, and the affirmative charges on the first and seventh counts of the complaint were properly refused. As we have said, the evidence tends to support each of these counts, and there was evidence from which the jury was authorized to find that Edmunds was not at fault in respect of having the train under control as it approached Phelan's station.

There was also evidence that had the brakes been applied three-quarters of a mile from Phelan's Station, the train could have been brought under control so as to have been stopped short of the collision. Hence it does not follow as stated in charge 7 that Edmunds was remiss in his duty in not calling for brakes at a greater distance from that station. Moreover, the whistle for the water-board, a mile from Phelan's, while not a specific call for brakes, or which might have been so understood by the jury, was according to a tendency of the evidence, notice to the brakemen that the point for getting the train under control had been reached, and charge 7 would have tended to mislead the jury to pretermit the consideration of this evidence going to show due care and diligence on the part of Edmunds.

The evidence is not without conflict on the question whether this train if running at the rate of forty miles an hour immediately before the whistle was given for the water-board could have been brought under control and stopped short of Phelan's station. Hence charge 9 was properly refused.

Similarly there was conflict in the evidence as to whether it was necessary for Edmunds in the exercise of due care and prudence to have called for brakes between Cullman and the "swag" or "sag" testified about; and charge 20 was therefore well refused.

And charge 21 is, to say the least misleading. The whistle for the water-board was the doing of something "to check the speed of the train" as those words are used in the charge, and yet that was not specifically a call for brakes, and when the water-board signal was given the train was not "going down the hill or grade just north of Phelan's" as the jury might well have understood these last words.

Charge 22 is abstract; there was no evidence that Edmunds' train passed another at Cullman.

Charges 10, 11, 12 and 13 to the effect that under the evidence there was no duty resting on the defendant to do certain things severally specified in them, were properly refused. At the time they were asked there was no evidence nor reference in any way in the case as to these matters, and no insistence that the defendant was under duty to do the things. The charges were abstract in a sense, and argumentative.

Charge 14 is inaccurate. By force of the requirement of the rule that Edmunds' train should approach Phelan's Station under control, "expecting to find the main track occupied," it may be that he was chargeable with notice that a train was standing on the main track at that place; but to say that he was chargeable with knowledge that any particular train, or that the front section of train No. 15 was there, when it might well have been that that train had passed on and another had stopped at Phelan's, and when but for an unforeseen accident, wholly unknown to Edmunds, it would have passed on before he approached, is inapt, especially as the signal he received at Cullman two and a half miles north of Phelan's indicated in some degree that the first section of train No. 15 had gone on beyond Phelan's. The court properly stated the law in this connection in charges given at defendant's request.

Charge 15 is a mere argument.

The court committed no error in admitting incidentally testimony to the effect that three persons were killed in the wreck. This was of the *res gestæ* of the occurrence as tending in some measure to show the violence of the collision and that deceased's train was running at a great rate of speed—too great, the inference afforded is—for persons to jump from it and save themselves; and the tendency of the fact is rather favorable to the defendant than otherwise.—*Chicago, St. Louis & Pittsburgh Railroad Co. v. Spicker*, 134 Ind. 380, 393; *West Chicago Railroad Co. v. Kennelly*, 170 Ill. 508.

Assuming there was error in the rulings of the court sustaining objections to questions propounded to the witnesses Brisford and White as to the speed at which Edmunds' train could be started over the first grade south of Cullman, under the circumstances existing on

[Louisville & Nashville Railroad Co. v. Mothershed, Adm'r.]

the occasion under inquiry, in order for it to have been under Edmunds' control in approaching Phelan's so as to have enabled him to stop it at the switch there, the error was rendered entirely innocuous by the action of the court in subsequently allowing each of these witnesses to testify fully as to the matters involved in the questions:   If error, it was without injury to the defendant.

The whole contest in this case was upon th equestion of the alleged contributory negligence of the deceased. That the conductor or flagman, or both, of the train standing at Phelan's was guilty of proximate negligence, was in reality not controverted on the trial.   On this state of case the presence of rules 30 and 31 and that part of rule 97 to which objection was made in the evidence allowed to go to the jury could not possibly have prejudiced the defendant.   Moreover, these rules were not impertinent to the averments of counts which were in the case at the time the rulings complained of were made.   And the same is true of the testimony of Whaley as to the practicability of putting the first train on the side track.

The testimony as to the engine going to Hanceville for a doctor, though irrelevant, was of benefit to the defendant, if it had any effect whatever, as tending to show consideration and care on the part of its servants for Edmunds after he received the injuries of which he died.

It was insisted for defendant that it was Edmunds' duty to have his train under such control that it could be stopped without resorting to reversing the engine. In view of this, we do not think appellant can justly complain of the evidence of Hughes going to show that it was dangerous to reverse an engine, etc., etc.

The other rulings of the trial court are so clearly free from error that we deem it unnecessary to discuss them.

The judgment of the city court must be affirmed.

Affirmed.